**TOM L. SCOTT, INC., et al., Relators,**

v.

**The Honorable Grainger W. McILHANY, Judge, Respondent.**

**No. C–7824.**

Supreme Court of Texas.

Oct. 24, 1990.

---

Jack O'Neill, Houston, for relators.

Jess H. Hall, Jr., Houston, Bill W. Waters, Pampa, Oscar Fields, Charles R. Watson, Amarillo, Layton Z. Woodul, Lubbock, Robert L. Templeton, Amarillo, M. Kent Sims, Wheeler, and Charles L. Tighe, Midland, for respondent.

**1.** The relators are Tom L. Scott, Inc., George Johnson, Sunshine Exploration Co., W.W. Braden III, and Canyon Energy, Inc. They will collectively be referred to as the Scott group.

## OPINION

GONZALEZ, Justice.

This is an original mandamus proceeding involving pretrial discovery of expert witnesses. The relators, Tom L. Scott, Inc. and others,[1] seek relief from orders signed by the respondent, the Honorable Grainger W. McIlhany, denying discovery of six experts retained by various parties to the case. By this mandamus, relators seek to obtain the depositions of these experts. The defendants changed the designation of these experts from "testifying" experts to "consulting-only" experts after they settled with some of the plaintiffs and third-party defendants in the underlying suit. The court of appeals denied the petition for writ of mandamus. 753 S.W.2d 214. We hold that the redesignation under the facts before us violates the purpose of discovery enunciated in *Gutierrez v. Dallas Independent School District*, 729 S.W.2d 691, 693 (Tex.1987), and in *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984, orig. proceeding), and is, therefore, ineffective. Thus we conditionally grant the writ.

This case arose from the October 1981 blowout of Key Well 1–11 in Wheeler County. In terms of the gas loss, this is believed to be the largest gas well blowout in United States history. It was not brought under control for over a year. Apache Corporation operated the well and, along with El Paso Exploration Company (now known as Meridian Oil Production Company), owned the working interest. Over one hundred parties, including mineral interest owners from adjacent properties, royalty interest holders, and claimants through such properties, particularly Arkla Exploration Company, Stephens Production Company, Hobart Key, and other owners of interests in the same field, filed suits against Apache and El Paso seeking damages alleging that Apache and El Paso's wrongful acts caused the blowout. All of these cases have been consolidated by the trial court.[2] Only the parties and actions pertinent to this mandamus proceeding will be discussed.

**2.** Not a subject of this proceeding is the testimony of various experts retained by the parties to aid in the litigation during the period between the first suit in 1982 and 1984 when Axelson

Apache and El Paso eventually brought third-party claims against their suppliers and contractors alleging product liability and negligence theories as causes or partial causes of the blowout. As supplier of a relief valve for the well, Axelson, Inc. and its parent corporation, U.S. Industries, Inc., were sued as third-party defendants.[3] Apache and El Paso also added Sooner Pipe & Supply Corporation, Hydril Company and Babcock & Wilcox Company alleging that these third-party defendants supplied equipment that caused the well to blow out. The Scott group, owners of various mineral interests in the same field and relators herein, intervened as plaintiffs and alleged causes of action against Apache and El Paso.

The initial plaintiffs, Arkla, Stephens and Key (Arkla/Key), and third-party defendants, Sooner, Hydril and Babcock & Wilcox, designated the six experts in question as *testifying* experts.[4] Allegedly, these experts were prepared to deliver damaging testimony against Apache and El Paso. On the morning the Arkla/Key witnesses' depositions were scheduled, Apache and El Paso settled with these parties on the condition that Apache and El Paso gain control of the experts. Following execution of the settlement, Apache and El Paso, along with the settling parties, redesignated all six as *consulting-only* experts.

■ The trial court denied requests by the Scott group to depose the experts. Specifically, the Scott group filed a motion to take depositions of the experts, and Judge McIlhany denied it. This order, along with others denying depositions of the experts, form the basis of this mandamus proceeding. We must determine whether the trial court abused its discretion. Relators assert and we agree that mandamus is the only remedy because the protective order shields the witnesses from deposition and thereby prevents the evidence from being part of the record.[5] Therefore, it would be impossible to determine on appeal if the denial were harmful error. *Jampole*, 673 S.W.2d at 576. We next address the critical question presented in this case—whether a party may obtain an adversary's testifying experts and redesignate them as consulting-only experts to avoid discovery.

■ Designating these experts as testifying experts subjected their work product to discovery. Texas Rule of Civil Procedure 166b(2)(e)(1) provides in part:

A party may obtain discovery of the identity and location (name, address and telephone number) of an expert who may be called as an expert witness, the subject matter on which the witness is expected to testify, the mental impressions and opinions held by the expert and the facts known to the expert (regardless of when the factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by the expert.

Depositions were scheduled but never took place because Apache and El Paso settled with all of the parties who had made these

and U.S. Industries (Axelson) were added as third-party defendants.

3. Axelson and U.S. Industries have also brought a discovery mandamus proceeding involving this and other issues which was also handed down today. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550 (Tex.1990, orig. proceeding).

4. The experts include Cranston Flesher and Roy C. Williamson, initially retained by Arkla and Stephens; T.B. O'Brien, initially retained by Key and others; Rex McClellan, E.B. West, and Doug S. Burns, designated by third-party defendants Sooner, Hydril and Babcock & Wilcox.

5. Respondents argue that the discovery orders complained of are reaffirmations or refusals to reconsider discovery decisions made in 1985 and that relators have lost their right to the mandamus remedy, which is governed by equitable principles, because of the delay of two and a half years before seeking mandamus relief. We disagree. While it is true that over two years had elapsed between the initial discovery hearing and the time that relators sought mandamus, during this period there were numerous discovery hearings in the trial court involving many of the same issues now before the court.

Also, respondents accuse the Scott group of coming to court with "unclean hands." We rejected this contention in *Axelson, Inc. v. McIlhany,* 798 S.W.2d at 552 n. 2.

designations. As part of the settlement agreement, all rights to the six experts were assigned to Apache and El Paso.[6] Specifically, all of the settling parties except Key assigned their experts to Apache and El Paso. Key agreed to keep its experts confidential except as to Apache and El Paso. Additionally, the settlement agreements provided that all of the settling parties were obligated, unless ordered by a court, "to refrain from disclosing to any persons or entities," other than Apache and El Paso, "information, reports, or opinions generated by any expert."

Upon gaining control of the experts, Apache and El Paso redesignated them as consulting-only experts. The settling parties also redesignated the experts as consulting-only experts. Identities and opinions of experts are nevertheless discoverable if they are not engaged in anticipation of litigation and solely for consultation or if their work product has been reviewed or relied upon by testifying experts. *See* TEX. R.CIV.P. 166b(3)(b).[7] The trial court allowed the redesignation and refused requests by the Scott group to depose these experts. The Scott group asks us to hold this redesignation invalid.

The primary policy behind discovery is to seek truth so that disputes may be decided by facts that are revealed rather than concealed. *Jampole,* 673 S.W.2d at 573. Privileges from discovery run contrary to this policy but serve other legitimate interests. The policy behind the consulting expert privilege is to encourage parties to seek expert advice in evaluating their case and to prevent a party from receiving undue benefit from an adversary's efforts and diligence. *Werner v. Miller,* 579 S.W.2d 455, 456 (Tex.1979, orig. proceeding); *see also* D. KELTNER, TEXAS DISCOVERY § 3.110 (1989). But the protection afforded by the consulting expert privilege is intended to be only "a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salutary objects" of discovery. *Williamson v. Superior Court,* 21 Cal.2d 829, 148 Cal.Rptr. 39, 582 P.2d 126, 132 (1978); *see also Chuidian v. Philippine Nat'l Bank,* 734 F.Supp. 415, 423 (C.D.Cal.1990) (interpreting *Williamson* as holding agreements to suppress evidence or conceal discreditable facts are illegal); *Raytheon Co. v. Superi-*

---

6. The Arkla settlement agreement contained the following paragraph:

   4. *Assignment of Litigation or Investigation Information.*
   For good and valuable consideration, Claimant hereby assigns to Apache and El Paso all rights now existing or to exist in the future which it or its attorneys have to: work product of its attorneys; investigations; analyses; studies; the information, reports or opinions generated by any expert or expert witness, whether hired for consultation or for purposes of testifying at trial; communications with any expert or expert witness and the right to communicate with any expert or expert witness; employment of any expert or expert witness; and any rights similar to the foregoing concerning its prosecution of the above styled case or the facts giving rise to that case. Claimant agrees to allow the attorneys for Apache and the attorneys for El Paso reasonable access to inspect and copy any documents, now existing or to exist in the future, which in any manner relate to the foregoing, though nothing herein shall require Claimant to actively assist in the trial preparation of Apache and/or El Paso other than furnishing information like that referred to in the Paragraph.

The Key, Stephens, Sooner, Hydril and Babcock & Wilcox agreements contained similar paragraphs.

7. Texas Rule of Civil Procedure 166b as it existed at the time of the hearing before the trial court stated as follows:

   3. Exemptions. The following matters are protected from disclosure by privilege: ... b. Experts. The identity, mental impressions and opinions of ... an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial or any documents or tangible things containing such information if the expert will not be called as a witness, except that the identity, mental impressions and opinions of an expert who will not be called to testify and any documents or tangible things containing impressions and opinions are discoverable if the expert's work product forms a basis either in whole or in part of the opinions of an expert who will be called as a witness.

   This rule has been amended effective September 1, 1990. The amendment provides, in part, that the exemption from discovery for consulting-only experts is lost "if the consulting expert's opinions or impressions have been *reviewed* by a testifying expert." *See* TEX.R.CIV.P. 166b(3)(b).

**560**

*or Court,* 208 Cal.App.3d 683, 256 Cal. Rptr. 425, 427 1989) (interpreting *Williamson* as holding agreements between adversarial codefendants to suppress expert testimony are against public policy).

The redesignation of the experts in this case was an offensive and unacceptable use of discovery mechanisms intended to defeat the salutary objectives of discovery. Attorneys for Apache and El Paso even admitted to the trial judge that the settlements were "expressly contingent" on these experts not being required to give their testimony, and that there might not be a settlement agreement if the depositions were ordered. One of the settling parties expressly told the trial court that he understood the settlement offer would expire upon the depositions being taken. The legitimate purposes and policies behind the consulting expert privilege do not countenance this conduct. We hold that, as a matter of law, the redesignation of experts under the facts of this case violates the policy underlying the rules of discovery and is therefore ineffective. *See Gutierrez,* 729 S.W.2d at 693; *Jampole,* 673 S.W.2d at 573.[8] "If we were to hold otherwise, nothing would preclude a party in a multi-party case from in effect auctioning off a witness' testimony to the highest bidder." *Williamson,* 148 Cal.Rptr. at 45, 582 P.2d at 132. Because the redesignation of experts under the facts of this case violates the clear purpose and policy underlying the rules of discovery, the trial court abused its discretion in granting the protective order as to these six experts. We are confident Judge McIlhany will vacate his orders denying discovery and will render orders consistent with this opinion. Should he fail to do so, the clerk of the supreme court is directed to issue the writ of mandamus.

---

**8.** The court of appeals cites *Werner v. Miller,* 579 S.W.2d 455, 456 (Tex.1979, orig. proceeding) and *Jones & Laughlin Steel, Inc. v. Schattman,* 667 S.W.2d 352, 355–56 (Tex.App.—Fort Worth 1984, orig. proceeding) as support for the proposition that once a witness is designated as a consulting-only expert, his or her opinions and impressions are protected from discovery. However, these cases are clearly distinguishable from the instant case. Neither *Werner* nor *Schattman* involved a bargain between adversaries to suppress testimony and we need not address other issues raised by those cases.