C. Scott WOLT, personally and as trustee for the Workers Compensation Fund of Utah, Plaintiff,

v.

SHERWOOD, A DIVISION OF HARSCO CORPORATION, a corporation, Manchester Tank and Equipment, a corporation, Defendants.

No. 92–C–486 A.

United States District Court,
D. Utah, C.D.

Aug. 6, 1993.

Kent B. Linebaugh, James M. Dunn, E. Scott Lee, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, UT, for plaintiff.

Stuart L. Poelman, Shawn E. Draney, Snow, Christensen & Martineau, Salt Lake City, UT, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANTS

ALDON J. ANDERSON, Senior District Judge.

### I. INTRODUCTION

Plaintiff C. Scott Wolt ("Wolt") has asked this court to disqualify Snow, Christensen & Martineau ("Snow Christensen") from representing defendants Sherwood Corporation and Manchester Tank & Equipment Corporation (collectively "Sherwood") in this case. Snow Christensen previously represented other state court defendants sued by Wolt, including Petrolane Gas Service Limited Partnership (collectively "Petrolane"). Wolt asserts that as part of the settlement between Petrolane and Wolt ("Wolt/Petrolane Settlement"), Petrolane agreed to not make available to counsel for Sherwood, the cause and origin experts retained by Petrolane through Snow Christensen.[1] Wolt argues that to allow Snow Christensen to now represent Sherwood will violate the Wolt/Petrolane Settlement.

Sherwood, through Snow Christensen, responds to Wolt's disqualification argument by claiming that Petrolane never agreed to an "expert witness limitation" as part of the Wolt/Petrolane Settlement.[2] Consequently, Snow Christensen argues, no breach of the Wolt/Petrolane Settlement could occur as a result of its now representing Sherwood. Alternatively, Snow Christensen argues that even if the "expert witness limitation" was part of the Wolt/Petrolane Settlement, the limitation is against public policy.

Having fully considered the matter, the court is persuaded that the Wolt/Petrolane Settlement includes a restriction on the use of Petrolane experts, and that Petrolane may have breached that Settlement. The court is not persuaded, however, that the Wolt/Petrolane Settlement compels the disqualification of Sherwood's counsel of choice.[3]

### II. BACKGROUND

This case arises from injuries that Wolt received while driving a 1984 International five-ton flatbed truck in the course of his employment. The truck was equipped with a dual-fuel system, which allowed the truck to be powered by gasoline and by liquid propane. The propane fuel system was equipped with two fuel tanks mounted on each side of the truck. The fuel tanks used a safety valve system to prevent excess liquid propane from escaping from the tanks while in use.

While Wolt was driving the truck, a fire started which caused him to pull over and exit the vehicle.[4] Wolt asserts that the valve on the propane tanks failed to operate properly and that, as a consequence, the propane escaped from the tank striking Wolt. The propane ignited and Wolt was burned over 60 percent of his body.

Following the accident, Wolt commenced an action in Utah state district court against

---

1. Sherwood was represented by the law firm of Snell & Wilmer at the time of the Wolt/Petrolane settlement.

2. Neither counsel for Wolt nor Sherwood retained independent counsel to assist them in presenting the matter to the court. This hampered the court as frequently argument drifted into the first person with counsel stating, as an example, not under oath, that he would never have agreed, on behalf of his client, to the inclusion of certain terms as part of the Wolt/Petrolane Settlement. In that regard, the court believes that counsel for both parties should review Utah Rule of Profession Conduct 3.7 before undertaking additional action, if any, with regard to enforcement of the Wolt/Petrolane Settlement.

3. The motion was initially argued before the court on May 20, 1993. Thereafter, the parties submitted additional exhibits, and requested further argument. The court agreed to the request, and took further oral argument on June 24, 1993. Following that hearing, the parties submitted supplemental memoranda which the court has reviewed.

4. The parties dispute the cause and origin of the initial fire.

numerous business entities and individuals, including Petrolane, who had been involved in the production and distribution of the truck's propane tanks and other products. ("Wolt I"). Wolt did not, however, initially sue Sherwood. Wolt subsequently asked the state court to allow it to amend its complaint to bring a claim against Sherwood. The state court refused because of the passage of time, and the desire to maintain its trial schedule. Wolt thereafter filed a separate state suit against Sherwood ("Wolt II"). Sherwood then removed *Wolt II* to this court on the basis of diversity jurisdiction.

Prior to the *Wolt I* trial, Wolt and Petrolane entered into settlement negotiations. On July 21, 1992, Petrolane's counsel, Snow Christensen, through Stuart Poelman, wrote a letter to Wolt's counsel offering to settle the case for payment of a substantial sum of money, and the execution by Wolt of a "Settlement Agreement, Release of All Claims and Indemnification Agreement" (hereafter "Poelman Letter").[5] The Poelman Letter provided that the settlement offer would expire at 5:00 p.m. on July 21, 1992.

. Before the expiration of the Petrolane offer, counsel for Wolt, Kent Linebaugh, sent a letter by telefax to Poelman, stating that the settlement offer was accepted with the understanding that "[Petrolane's] cause and origin experts will not be made available to counsel for RegO [a nonsettling Wolt I defendant], Manchester or Sherwood" (hereafter "Linebaugh Letter").[6] The Linebaugh

Letter further stated that Linebaugh assumed that Snow Christensen would "forthwith draft the settlement documents you desire to accomplish a formal dismissal of Plaintiff's claims against Petrolane." [7]

The next morning, on July 22, 1992, Shawn E. Drany ("Drany") of Snow Christensen called H. Wayne Wadsworth ("Wadsworth"), counsel for RegO, and informed him that Petrolane had settled with Wolt and that "pursuant to the terms of the settlement agreement, RegO could not use Tom Crane as an expert witness." Aff. of Wadsworth, dated June 28, 1993, ¶ 3.[8] Tom Crane and his associates were Petrolane's cause and origin experts.

Subsequent to July 22, 1992, Drany provided to counsel for Wolt a document entitled "Settlement Agreement, Release of All Claims and Indemnity Agreement" (hereafter the "Release").[9] The Release stated that in exchange of the payment of the settlement amount, Wolt released Petrolane from all liability. The Release was silent, however, as to sharing of expert witnesses by Petrolane with Sherwood. In spite of that silence, Wolt reviewed the Release and signed the same on August 6, 1992.[10]

Shortly after the Wolt/Petrolane Settlement, Sherwood contacted Snow Christensen about becoming its counsel in Wolt II. Concerned about Petrolane's desires, Snow Christensen contacted Petrolane to ask its approval to the Sherwood representation.[11]

---

**5.** Poelman Letter at 1. The Poelman Letter is attached as Ex. 1 to Wolt Supp.Mem. in Supp. of Mot. to Disqualify. The exact amount offered, and eventually paid by Petrolane, in the Wolt/Petrolane Settlement is confidential.

**6.** Linebaugh Letter at 1. The Linebaugh Letter is attached as Ex. 2 to Wolt's Supp.Mem. in Supp. of Mot. to Disqualify.

**7.** Linebaugh Letter at 1.

**8.** The Aff. of Wadsworth is attached as Ex. 3 to Wolt's Supp.Mem. in Supp. of Mot. to Disqualify.

**9.** A courtesy copy of the Release was provided to the Court for its review. Because of the confidential nature of the Wolt/Petrolane Settlement, a copy of the Release has not been provided to the Clerk of the Court for the file.

**10.** Wolt clearly read and understood the release. Evidence of that review is indicated by the inter-

delineation on page 2 of the Release by Wolt's counsel clarifying certain terms.

**11.** Drany did not explain at the hearing of June 24, 1993, why Snow Christensen believed it needed Petrolane's approval to the Sherwood representation. (See footnote 1 as to nature of the June 24, 1993 hearing.) It is probable, however, that the reason is because it would be in Sherwood's best interest to argue at trial that Petrolane was primarily at fault in causing Wolt's injuries, and that its own percentage of fault under Utah Code Ann. § 78–27–39 (1992) is less as a result of Petrolane's fault. A defendant in a Utah tort action is only liable up to his or her percentage of fault. Utah Code Ann. § 78–27–40 (1992).

Petrolane granted the approval, and on March 1, 1993, Snow Christensen entered its appearance on behalf of Sherwood.

Wolt moves to disqualify Snow Christensen because of its belief that Snow Christensen will use the opinions of Tom Crane in crafting the defense of Sherwood. Sherwood responds that Snow Christensen will not use Tom Crane, as its defense theory is different from Petolane's.[12]

## III. ANALYSIS

The primary issues before the court are (1) whether the Wolt/Petrolane Settlement included the limitation that Petrolane's cause and origin experts would not be made available to counsel for Sherwood, (2) whether such a limitation is against public policy, and (3) whether such a limitation compels the disqualification of Snow Christensen from representing Sherwood.

### A. The Wolt/Petrolane Settlement.

■ In determining the terms of the Wolt/Petrolane Settlement, Sherwood would have the court look solely at the terms of the Release. In that regard, the Release document is entitled "Settlement Agreement, Release of All Claims and Indemnity Agreement," and sets forth the essential terms of a settlement. The Release contains no reference, however, as to expert witnesses. Sherwood argues that this lack of reference illustrates that Petrolane never agreed to the condition in the Linebaugh Letter that Petrolane would not share its expert witnesses with Sherwood. See Aff. of Stuart L. Poelman, dated June 29, 1993, ¶ 5.[13]

■ Sherwood argues that, because the Release sets forth the basic terms of a settlement, the parol evidence rule precludes reference to extrinsic evidence, such as correspondence exchanged between counsel, to add terms to the Wolt/Petrolane Settlement other than what is set forth in the Release. In deciding the application of the parol evidence rule, a federal court looks to state law. See *Applied Genetics v. First Affiliated Securities,* 912 F.2d 1238, 1245 (10th Cir.1990); *Catullo v. Metzner,* 834 F.2d 1075, 1079 (1st Cir.1987). The Utah Supreme Court has ruled as follows with regard to the application of the parol evidence rule:

> [T]he settled rule [for] interpreting a contract [is to] first look to the four corners of the agreement to determine the intention of the parties. The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement or if it is ambiguous in expressing that agreement. Contract provisions are not rendered ambiguous merely by the fact that the parties urge diverse interpretations.

*Palmer v. Davis,* 808 P.2d 128, 132 (Utah App.1991) (citations omitted).

■ Applying this test to the Release document, the court believes that sufficient ambiguities exist to justify the examination of extrinsic evidence to determine the parties intent in the Wolt/Petrolane Settlement.[14] First, while the Release is labeled "Settlement Agreement," it is only signed by one party. Second, the Confidentiality Section of the Release refers to both "this settlement" *and* "this Settlement Agreement Release of All Claims and Indemnity Agreement" as being subject to an agreement of confiden-

12. Sherwood is aware of Petrolane's defense theories because of Snow Christensen's knowledge of Crane's opinions and findings. Thus, there is no real doubt that Petrolane's cause and origin experts have been made available to "counsel" for Sherwood. No "chinese wall" was erected by Snow Christensen when it was retained by Sherwood to prevent the knowledge of Crane's opinions from being used by Sherwood. Indeed, such a wall would have frustrated Sherwood's retention of Snow Christensen. It was made quite clear at the June 24, 1993 hearing that Sherwood wanted to hire Petrolane's individual counsel, Poelman and Drany, and was not interested in having someone else at Snow Christen-

sen represent it. Only in this way, could Sherwood save the thousands of dollars in attorney fees it would have to pay its existing counsel to "catch up" with the discovery, etc., that had occurred in Wolt I, prior to the filing of Wolt II.

13. The Aff. of Poelman was filed with Defendants' Supp.Mem.Opp.Mot. to Disqualify. Mr. Poelman did not participate in any of the oral arguments before the court.

14. While the issue of whether or not the Release is ambiguous is a question of law, the issue of the parties' intent is one of fact. *Fitzgerald v. Corbett,* 793 P.2d 356, 358 (Utah 1990).

tially. Finally, the Release does not contain an integration clause to indicate that its sets forth all of the terms of the settlement.

■ The Linebaugh Letter unambiguously states that Wolt's acceptance of Petrolane's offer was based upon the understanding that Petrolane's cause and origin experts would not be made available to counsel for Sherwood. In Poelman's affidavit, Poelman states that he believed Linebaugh's "understanding" was merely a suggestion for an additional term, which Petrolane did not accept. No evidence exists, however, that Poelman communicated his belief to Linebaugh, and no affirmative steps were taken by Petrolane to reject the "expert witness limitation." The mere sending of the ambiguous Release document to Wolt, which is silent on the expert witness limitation, was not sufficient notification that Petrolane disagreed with Wolt on the inclusion of the limitation in the Wolt/Petrolane Settlement.[15]

■ Not only did Petrolane fail to reject the "expert witness limitation," it affirmatively agreed to that limitation by taking steps on the morning of July 22, 1993, which confirmed the arrangement to not make available to counsel for RegO, a nonsettling Wolt I defendant, its cause and origin expert. Counsel for RegO, Wadsworth, testified by affidavit that Petrolane's counsel, Drany, called him on the morning of July 22, 1993, the day after Petrolane's receipt of the Linebaugh Letter, and informed him that Petrolane had settled with Wolt, and that "pursuant to the terms of the settlement agreement, RegO could not use Tom Crane as an expert witness." Aff. of Wadsworth at ¶ 3.[16]

Based on the foregoing, the court finds that the Wolt/Petrolane Settlement provided that Petrolane would not make available its cause and origin experts to counsel for Sherwood.

**B. Public Policy and the Expert Witness Limitation.**

■ Sherwood asserts that a provision in a settlement agreement which provides that expert witnesses may not be hired by nonsettling parties is against public policy, and should not be enforced. Wolt disagrees, and claims that a common purpose of settlement is to "purchase" the expertise of the settling party, at the expense of nonsettling parties. Two states have addressed the issue of whether a plaintiff should be allowed to purchase the expertise of a settling defendant, reaching opposite results.

The Texas Supreme Court in *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556 (Tex. 1990), determined it was against public policy to preclude the use of experts by non-settling defendants. The court was concerned with the propriety of redesignating "testifying" expert witnesses to "consulting" experts pursuant to a settlement agreement between the plaintiffs and a co-defendant. In the case, a third party defendant designated six expert witnesses "to deliver damaging testimony" against the defendant/third party plaintiff. *Id.* at 558. However, on the morning the expert witnesses were to be deposed, the defendant/third party plaintiff settled with the third party defendant on the condition that the experts be redesignated as "consulting" experts. *Id.* Under the Texas Rules of Civil Procedure, consulting experts may not testify at trial and their testimony is privileged from discovery. *Id.* (citing Tex. R.Civ.P. 166b). The redesignation of the experts, pursuant to the terms of the settlement, effectively prevented other third party

---

**15.** It is black letter law that where one party to a contract is aware of a unilateral mistake by the other party to the contract, as to the meaning of the contract, the party aware of the mistake cannot complain when the contract is interpreted to comply with the understanding of the mistaken party. See Arthur L. Corbin, Corbin on Contracts §§ 537, 538, 599 (One Vol.Ed.1952). *See also Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 480 (Utah App. 1989).

**16.** If Wolt's "expert witness limitation" is treated as a demand for an additional term, then Linebaugh's letter of July 21, 1993, constituted a counteroffer to Petrolane's settlement offer earlier in the day. Petrolane accepted that counteroffer by taking action in conformance with the counteroffer including, but not limited to, the refusal to make its cause and origin expert, Tom Crane, available to RegO, and the payment of the settlement funds. In Utah, there is no requirement that a final settlement document be signed by the parties before a settlement exists. See *Zions First Nat'l Bank*, 781 P.2d at 480 n. 1.

defendants from using the damaging testimony developed by the experts.

Considering the propriety of the settlement agreement, the Texas Supreme Court stated that "[t]he primary policy behind discovery is to seek truth so that disputes may be decided by facts that are revealed rather than concealed." *Id.* at 559. The court reasoned that the protection afforded to a consulting expert is only "a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or defeat the salutary objects of discovery." *Id.* Noting decisions from other jurisdictions which concluded that "agreements to suppress evidence or conceal discreditable facts are illegal," [17] the court stated: "The redesignation of experts in this case was an offensive and unacceptable use of discovery mechanisms intended to defeat the salutary objectives of discovery." *Id.* at 560. The court rejected the settlement agreement's redesignation of the expert witnesses.

Reaching the opposite result, the West Virginia Supreme Court held in the case *Board of Education v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990) that a settlement agreement used by a settling defendant which prevented non-settling defendants in the action from using expert testimony produced by the settling defendant was enforceable. In that case, a school board filed an action for damages against an architect for the failure to adequately design and supervise the construction of a building. *Id.* 390 S.E.2d at 800. The school board also filed an alternate complaint against the general contractor who built the structure. *Id.* In preparing its defense, the general contractor procured several experts who were prepared to testify regarding damages issues. *Id.* at 812. Prior to trial, the general contractor decided to settle the school board's claims against it rather than proceed to trial. *Id.* In the settlement agreement, the general contractor agreed not to "make available to the remaining parties in the civil action ... any expert witnesses named by it in connection with the same civil action." *Id.* The architect re-

fused to settle the suit and, on appeal, contested the validity of the general contractor's agreement not to make its expert witnesses available to the architect's defense.

The West Virginia Supreme Court found the settlement agreement acceptable and rejected the architect's claim. The court stated that defendants in a multi-party case should retain their own experts, and not rely upon other defendants. The court noted:

"[i]t is obvious to any sophisticated trial lawyer that in litigation involving multiple defendants there is a likelihood that settlement will occur before trial. To rely on another party defendant's witnesses without some formal agreement as to the shared use is to invite the consequences that arose ... in the present case."

*Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796, 812 (1990).

Having reviewed the foregoing decisions, the court is persuaded that West Virginia more accurately states the rule that should be followed by this court. Unlike Texas, the Federal Rules of Civil Procedure provide broad protection against discovery of opinions held by consulting experts. Only upon a showing of "exceptional circumstances," or compliance with Federal Rule of Civil Procedure 35(b), can a party obtain information from the consulting experts of another party. Fed.R.Civ.P. 26(4)(b)(B). The importance of this rule is illustrated in the Tenth Circuit case of *Durflinger v. Artiles,* 727 F.2d 888 (1984).

In *Durflinger,* the plaintiffs hired a psychiatrist to assist in a wrongful death case. While originally identified as an expert witness who would testify at trial, the plaintiffs changed their mind and notified defendants that the psychiatrist would only act as a consultant. *Id.* at 891. Defendants thereupon sent a request to the psychiatrist asking for a copy of his report. *Id.* The psychiatrist complied with the request, and defendants attempted to enter the expert as their own witness. *Id.* The trial court held that the defendants could not call the psychiatrist as a witness. *Id.* On appeal, the Tenth

**17.** *Id.* (citing *Chuidian v. Philippine Nat'l Bank,* 734 F.Supp. 415, 423 (C.D.Cal.1990)).

Circuit Court of Appeals agreed to the exclusion.

> In proceeding in this ... fashion, defendants violated Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b)(4)(B) provides that:
>
>> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
>
> The rule is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation.

*Id.* at 891.

The purpose of discovery is to determine the truth, and to apprise the parties of the facts so that settlement negotiations can take place. Discovery is also undertaken so that if settlement is not reached trial may proceed in an orderly and complete fashion, with neither side being disadvantaged due to "surprise." This court believes, that the purposes of discovery are not frustrated by allowing a plaintiff to purchase the expertise of a settling defendant. Nonsettling parties are not prejudiced because the "expertise" will be made available, in spite of a settlement, if the nonsettling parties can show "exceptional circumstances" under Fed.R.Civ.P. 26(b)(4)(B).[18]

■ The law encourages voluntary settlement of lawsuits. *Grundberg v. Upjohn Co.,* 140 F.R.D. 459, 468–69 (D.Utah 1991); *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.,* 781 P.2d 478, 479 (Utah App.1989). One factor which encourages settlement is the cost of obtaining expert witnesses. Fre-

quently, plaintiffs will take less, and defendants will pay more, in order to avoid litigation expenses. Similarly, plaintiffs may settle for less from one defendant, if they believe other defendants will be placed at a disadvantage by virtue of the settlement and will, consequently, pay more in settlement in the future.

To preclude a plaintiff from buying the expertise of a settling defendant could discourage the settlement process, and frustrate the public policy in favor of settlement. Accordingly, the court finds that the settlement between Wolt and Petrolane could legitimately include an agreement that Petrolane would not share its cause and origin experts with counsel for Sherwood.[19]

### C. Disqualification of Snow Christensen.

■ Wolt takes the position that since the Wolt/Petrolane settlement provides that Petrolane can not share its cause and origin experts with counsel for Sherwood, the then counsel for Petrolane, who negotiated the settlement, Snow Christensen, cannot now be allowed to be counsel for Sherwood. Wolt argues that the Snow Christensen representation of Sherwood frustrates the purposes of the Wolt/Petrolane settlement, and deprives Wolt of what it "bargained for."

The problem with Wolt's argument is that the Wolt/Petrolane settlement says nothing about Snow Christensen's future involvement in the litigation. Snow Christensen is not a party to the settlement agreement, and received no consideration from either Wolt or Petrolane to support an agreement to preclude Snow Christensen from representing other parties in the litigation. Even if such consideration had been paid, however, such an agreement to restrict Snow Christensen's future involvement in the litigation would run

---

18. Such exceptional circumstances might exist where the settling party's expert has a unique expertise which may not be readily available to other non-settling parties, or where the settling party's expert participated in tests which cannot be replicated by new experts.

19. There is no evidence that Petrolane's cause and origin experts have unique expertise, or that there are other exceptional circumstances in existence, as contemplated by Federal Rule of Civil Procedure 26(b)(4)(B), which would justify Sherwood having access to the opinions held by those experts.

afoul of Utah Rule of Professional Conduct 5.6.[20] That rule provides:

A lawyer shall not participate in offering or making:

\* \* \* \* \* \*

(b) An agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.[21]

 This does not end, however, the court's inquiry. The purpose behind Rule 5.6 is to preserve the right of clients to have attorneys available to represent their interests, and is not because of a concern about counsel's financial well being. *See Cohen v. Lord, Day & Lord,* 75 N.Y.2d 95, 551 N.Y.S.2d 157, 164, 550 N.E.2d 410, 417 (1989) (Hancock, Jr., J. dissenting). Thus, defendants cannot condition settlement on plaintiff's counsel agreeing to not accepting other cases against the defendants. On the other hand, the Rules of Professional Conduct do not allow counsel the right to provide representation to new clients which representation conflicts with counsel's continuing or prior representation of the settling client.[22] See Utah Rules of Professional Conduct 1.7 (conflicts with existing clients)[23] and 1.9 (conflicts with former clients)[24]. Courts may disqualify counsel for violations of the rules of professional conduct. *See, e.g., Smith v. Whatcott,* 757 F.2d 1098 (10th Cir.1990) (dealing with Canon 9 of Code of Professional Responsibility which is substantially the same as Rules 1.7 and 1.9).

In this case, the Wolt/Petrolane Settlement provided that Petrolane would not share its cause and origin experts with counsel of Sherwood. The reason for this condition was to deprive Sherwood of knowledge as to Petrolane's defenses so that Sherwood could not use that knowledge to either defeat Wolt's claim, or to shift blame to Petrolane.[25] By asking Petrolane to approve of its representation of Sherwood in Wolt II, Snow

---

**20.** The Utah Rules of Professional Conduct are derived from the American Bar Association Model Rules of Professional Conduct. The Utah rules became effective for the Utah Bar Association on January 1, 1988. The rules reflect the public policy of the State of Utah, and attorneys practicing before this court are expected to know and to comply with the rules. See D.Utah R. 103–1(h).

**21.** *See, e.g., Jarvis v. Jarvis,* 12 Kan.App.2d 799, 758 P.2d 244 (1988); *In re Moser,* 830 F.Supp. 403 (W.D.Mich.1993) re enforcement of Rule 5.6. At the June 24, 1993, hearing, Wolt's counsel made statements to the effect that Wolt was not only purchasing the expertise of Petrolane's cause and origin experts, but that it wanted to ensure that Snow Christensen would not be representing Sherwood. The statements were not made under oath, and the court questions if the statements accurately reflect Wolt's counsel's then understanding of the settlement. More likely, the statements were made as a result of Wolt's frustration that Sherwood was able to avoid the expert limitation provision of the Wolt/Petrolane Settlement by hiring Snow Christensen. In any event since the court finds that the Wolt/Petrolane Settlement did not expressly include "a restriction on the lawyer's right to practice," the court does not believe Wolt's counsel is guilty of violating Utah Rule of Professional Conduct 5.6.

**22.** The court is not aware of whether Petrolane was an existing client or former client of Snow Christensen at the time Sherwood approached Snow Christensen about undertaking its representation in Wolt II.

**23.** Rule 1.7 provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
 (2) Each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client ..., unless:
 (1) The lawyer reasonably believes the representation will not be adversely affected; and
 (2) Each client consents after consultation.

**24.** Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
 (a) Represent another person in the same or a substantially factually related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

**25.** Under Utah law, the jury will be asked to apportion fault among the parties who contributed to Wolt's injuries, including Petrolane and Sherwood. Utah Code Ann. § 78–27–39 (1992). Defendants need only pay their proportion of fault. Utah Code Ann. §§ 78–27–38 and 78–27–40 (1992). Consequently, the extent to which Sherwood's counsel can shift fault to Petrolane lowers the damage exposure to Sherwood.

Christensen was asking Petrolane to take the chance that it might breach the settlement agreement with Wolt. Such a breach would clearly be "adverse" to Petrolane, as contemplated by the Rules of Professional Conduct.

Nonetheless, Snow Christensen asked for Petrolane's approval to the Sherwood representation, and Petrolane gave that approval. As noted in Rules of Professional Conduct 1.7 and 1.9, however, adverse representation may occur if the current or former client "consents after consultation." Snow Christensen obtained Petrolane's consent to its representation of Sherwood.[26] Consequently, this court is not prepared to use either Rule 1.7 or 1.9 as a basis to disqualify Snow Christensen in this case.[27]

## IV. CONCLUSION

Wolt's motion to disqualify Snow Christensen from representing Sherwood is based upon the Wolt/Petrolane Settlement. That settlement provides that Petrolane will not share its cause and origin experts with counsel for Sherwood. The present representation of Sherwood by Petrolane's counsel frustrates the purpose of the expert limitation condition of the Wolt/Petrolane Settlement. Nonetheless, disqualification is not required because Petrolane, in accordance with the Utah Rules of Professional Conduct, has agreed to Snow Christensen's representation of Sherwood.[28]

Wolt's Motion to Disqualify Stuart L. Poelman, Shawn E. Drany, and the Law Firm of

Snow, Christensen & Martineau as Counsel for Defendants is DENIED.

**26.** The court is not aware of what consultation took place between Snow Christensen and Petrolane at the time Sherwood requested Snow Christensen's assistance in Wolt II. It is possible, however, given Snow Christensen's arguments before this court, that Snow Christensen did not inform Petrolane that Petrolane would be breaching the Wolt/Petrolane Settlement by consenting to Snow Christensen's representation of Sherwood.

**27.** Wolt did not raise either Utah Rule of Professional Conduct as a basis for its motion to disqualify. It cannot complain, therefore, if the court lacks adequate information to use the rules as a basis for disqualification. As noted in the Comment Section to Rule 1.7, only where clear

information is available that the fair and efficient administration of justice will be hindered as a result of a violation of the rule should a court allow opposing counsel to obtain the disqualification of other counsel. This is because motions for disqualification may misused as techniques of harassment. See Comment, Utah Rule of Professional Conduct 1.7, Utah Ct.Rules Ann. at p. 969 (1993).

**28.** Whether Wolt had a claim against Petrolane, and Petrolane has a claim against Snow Christensen as a result thereof is not before the court. If such claims are asserted in the future, however, counsel for the parties should pay attention to Utah Rule of Professional Conduct 3.7. See footnote 2, *supra*.