489 S.E.2d 24

**STATE of West Virginia ex rel. Linda WARD, as Executrix of the Estate of L. David Ward, and Linda Ward, Individually and as Mother and Next Friend of Isaac Willard Ward, Benjamin David Ward, Tiffany Sheree Ward and Kenneth Ryan Ward, Petitioners,**

v.

**Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County; F.G. Powderly, M.D.; Bruce Pierson, Jr., M.D.; and Jorge E. Prieto, M.D., Respondents.**

No. 23989.

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1997.

Decided July 2, 1997.

J. Robert Rogers, William deForest
Thompson, Hurricane, for Petitioners.

George W. Hill, Jr., pro se, Parkersburg.

William F. Foster, II, Jacobson, Maynard, Tuschman & Kalur, Charleston, for Respondent F.G. Powderly, M.D.

Stephen M. Fowler, Benjamin T. Hughes, Pullin, Knopf, Fowler & Flanagan, for Respondent Bruce Pierson, Jr., M.D.

STARCHER, Justice.

This original proceeding for a writ of prohibition asks this Court to vacate a January 24, 1997 ruling of the Circuit Court of Wood County allowing the defendants who remain in the underlying case to use the expert witnesses designated by the defendant who settled his portion of the case. The relators raise two questions in their petition: first, did the circuit court violate Rule 6(d) [1978] of the *West Virginia Rules of Civil Procedure* by holding a hearing on a substantive issue when the relators, plaintiffs in the underlying medical malpractice suit, were provided less than twenty-four hours notice of the hearing? Second, did the circuit court err in allowing the remaining defendants to use the expert witnesses of the settling defendant even through the settlement agreement between the settling defendant and the relators prohibited such use of the settling defendant's experts? Because the circuit court erred, we grant the requested writ.

I.

*Facts and Background*

The underlying case is a medical malpractice action brought by the Estate of David Ward, filed by his executrix and widow, Linda Ward, and the children of the decedent (the plaintiffs). The defendants were the decedent's three (3) treating physicians, Jorge E. Prieto, M.D., F.G. Powderly, M.D., and Bruce Pierson, M.D. Trial in the case was scheduled for April 21, 1997 in the Wood County Circuit Court.[1]

A discovery order entered on March 20, 1996 required the plaintiffs to identify their expert witnesses sixty (60) days after taking the defendants' depositions. The defendants

were required to identify their expert witnesses sixty (60) days from the disclosure of the plaintiffs' expert witnesses, provided plaintiffs' experts were "available for taking of their discovery depositions within the designated 60 day [sic] period."

Plaintiffs identified their experts on June 17, 1996 with a supplement filed on June 21, 1996. On August 20, 1996, defendant Powderly filed his identification of expert witnesses naming one physician, and he included the following reservation:

This Defendant reserves the right to designate additional experts if it becomes necessary based on the testimony of Plaintiff's [sic] experts.

On August 16, 1996, defendant Pierson filed his identification of expert witnesses naming two physicians, and he included the following reservations:

Defendant reserves the right to call any witness identified by any other party to this litigation.

Defendant reserves the right to call any expert witness needed to impeach the credibility of plaintiff's [sic] expert witnesses.

Defendant reserves the right to supplement this expert witness list following further discovery.

Defendant Prieto, after requesting and receiving an extension, filed his identification of expert witnesses on December 17, 1996. Defendant Prieto identified by name ten physicians, including the three defendants, and generally any other physician associated with the decedent's care.

Depositions of the plaintiffs' experts were taken in the fall of 1996 through January 1997, and settlement negotiations between defendant Prieto and the plaintiffs were undertaken.

On January 17, 1997, the defendant Prieto and the plaintiffs appeared to reach a settlement. According to a letter dated January 22, 1997 from plaintiffs' counsel to counsel for defendant Prieto, the settlement was accepted based on the following pertinent conditions:

---

1. Because a writ of prohibition is sought, the factual information presented in this opinion is

based on the petition, with attached exhibits and the responses, with attached exhibits.

(2) The withdrawal of all experts listed by you on behalf of Dr. Prieto as experts to be called to testify on behalf of Dr. Prieto on *ANY* issue, including causation as well as negligence. (These experts are to have no contact with any party or that party's representative without court order authorizing and approving the same.)

(3) The immediate cancellation of any depositions scheduled by you on behalf of Dr. Prieto of any witness, including any expert retained by and on behalf of Mrs. Ward. (emphasis in original).

There was no formal agreement among the defendants concerning the use of the expert witnesses. Counsel for remaining defendant Pierson attended a meeting during which the settling defendant's expert had discussed his potential testimony. However, none of the remaining defendants ever paid or, according to the plaintiffs, ever offered to pay for the services of the settling defendant's experts. There was no communication regarding shared usage, and no information was furnished by the remaining defendants to the settling defendant.

On January 22, 1997, the date of the settlement acceptance letter, counsel for remaining defendant Pierson communicated, via facsimile, to counsel for the plaintiffs that he wished to depose several of the experts identified by the settling defendant. According to counsel for remaining defendant Pierson, he telephoned plaintiffs' counsel on January 22, 1997, indicating his intention to use the settling defendant's witnesses and to seek a hearing on the expert witness issue on January 24, 1997. On January 23, 1997, plaintiffs' counsel, via facsimile, objected to any contact with the settling defendant's expert witnesses.

On January 23, 1997, plaintiffs' counsel received a notice of a hearing set at the request of counsel for remaining defendant Pierson for the next day (January 24, 1997) at 4:00 p.m. The notice arrived at approximately 5:00 p.m. at the offices of plaintiffs' lawyers. One of the plaintiffs' lawyers did not personally receive notice of the hearing until 10:30 a.m. on January 24, 1997; the other lawyer for the plaintiffs received a telephone call on January 23, 1997 informing him of the hearing.

On January 24, 1997, plaintiffs' counsel, arguing insufficient notice of the hearing under Rule 6(d) [1978] of the *West Virginia Rules of Civil Procedure* and insufficient time to research applicable West Virginia law, objected to the hearing and requested that the hearing be continued.

The hearing was held as scheduled. Except for counsel for remaining defendant Pierson who appeared in person, counsel for the other parties appeared by telephone. The hearing was conducted without a court reporter. According to plaintiffs' counsel, the hearing lasted only ten (10) minutes and plaintiffs' counsel had difficulty hearing "all of the conservation between Judge Hill and the defendant's counsel." The circuit court, after dismissing plaintiffs' objections based on inadequate notice, ruled that remaining defendants could talk to and use at trial any expert listed by any defendant, including the settling defendant.[2] Claiming both procedural error and substantive error, the plaintiffs petitioned this Court to prohibit the order's enforcement.

## II.

### *Discussion*

#### A.

##### *Criteria for Awarding a Writ of Prohibition*

■ Our general criteria for determining if we should issue a rule to show cause in prohibition were stated in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), which provides:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohi-

---

**2.** Because of an unrelated matter, Judge Hill voluntarily recused himself from the case about a week later. Thereafter the case was reassigned to another judge.

bition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*In accord* Syllabus Point 1, *State ex rel. W.Va. Fire & Casualty Co. v. Karl,* 199 W.Va. 678, 487 S.E.2d 336, (1997); Syllabus Point 2, *State ex rel. George B. v. Kaufman,* 199 W.Va. 269, 483 S.E.2d 852 (1997); Syllabus Point 1, *State ex rel. Fidelity and Guaranty Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995).

█ We continue to emphasize the extraordinary nature of a writ of prohibition. Because the remedy sought by prohibition is extraordinary, we have limited the exercise of our original jurisdiction "to circumstances 'of an extraordinary nature.'" *Fidelity, id.* 194 W.Va. at 436, 460 S.E.2d at 682, *quoting, State ex rel Doe v. Troisi,* 194 W.Va. 28, 31, 459 S.E.2d 139, 142 (1995). *See State ex rel. Smith v. Maynard,* 193 W.Va. 1, 454 S.E.2d 46 (1994), *overruled on other grounds, State ex rel. Mitchem v. Kirkpatrick,* 199 W.Va. 501, 485 S.E.2d 445 (1997); *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1994).

█ Although most discovery orders are interlocutory and reviewable only after final judgment, in certain circumstances involving a purely legal issue, a clear cut error, inadequate alternate remedies and judicial economy issues, this Court may issue a writ of prohibition when a circuit court abuses its discretion with regard to discovery. *See Fidelity, supra,* 194 W.Va. at 437, 460 S.E.2d at 682–83 for a discussion of the criteria for issuing a writ of prohibition involving discovery issues. Syllabus Point 1 of *State Farm Mutual Automobile Insurance Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992) states:

> A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.

*In accord* Syllabus Point 2, *Fidelity, supra;* Syllabus Point 3, *State ex rel. McCormick v. Zakaib,* 189 W.Va. 258, 430 S.E.2d 316 (1993). *See Nutter v. Maynard,* 183 W.Va. 247, 250, 395 S.E.2d 491, 494 (1990)("extraordinary relief [may be granted] where a discovery order presents a purely legal issue in an area where the bench and bar are in need of guidelines"); *State ex rel. Bennett v. Keadle,* 175 W.Va. 505, 334 S.E.2d 643 (1985).

In this case, we are asked for a writ of prohibition based on two issues. The first issue concerning the amount of notice required under Rule 6(d) [1978] of the *West Virginia Rules of Civil Procedure* presents a clear-cut issue without adequate alternate remedies because of the time factor. The second issue concerning the use of a settling defendant's expert witnesses by remaining defendants in violation of the settlement agreement presents a legal issue requiring immediate resolution because of judicial economy, namely, avoiding a second trial because of a high probability of reversal on appeal. Because these two issues should be addressed before a final judgment, we exercise our original jurisdiction to resolve them.

### B.

### *Rule 6(d) of the West Virginia Rules of Civil Procedure*

█ Generally this Court reviews a circuit court's ruling on a discovery request for an abuse of discretion. The importance of the *West Virginia Rules of Civil Procedure* was noted in *Fidelity,* 194 W.Va. at 439, 460 S.E.2d at 685, *quoting, McDougal v. McCammon,* 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995) by stating:

> "[T]he West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making ... procedural rulings. As the drafters of the rules appear to recognize, ... procedural rulings, perhaps more than any others, must be made quickly, without unnecessary fear of reversal, and must be individualized to respond to the specific facts of each case.... Thus, absent a few exceptions, this Court will review all aspects of the circuit court's

determinations under an abuse of discretion standard." (citations omitted).

In *Fidelity*, 194 W.Va. at 439, 460 S.E.2d at 685, we also noted that a heighten review is given where the circuit court has not followed the preference stated in the civil procedure rule or where "the trial court makes no findings or applies the wrong legal standard[.]" *Fidelity, quoting McDougal*, 193 W.Va. at 238, 455 S.E.2d at 797, *quoting, State v. Farley*, 192 W.Va. 247, 253, 452 S.E.2d 50, 56 (1994). "Where our Rules of Civil Procedure display a preference for a particular outcome, our review of decisions under those rules is sometimes more searching." *Fidelity*, 194 W.Va. at 439, 460 S.E.2d at 685.

With these standards of review in mind, we consider the issue of notice under Rule 6(d) [1978] of the *West Virginia Rules of Civil Procedure*. Rule 6(d) provides:

> For Motions—Affidavits.—A written motion, other than one which may be heard ex parte, and *notice of the hearing thereof shall be served not later than 7 days before the time specified for the hearing*, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 2 days before the hearing, unless the court permits them to be served at some other time. (emphasis added).

■ Rule 6(d) requires notice of a hearing to be served "not later than 7 days" before the hearing, unless a different period is fixed "by order of the court." In this case, notice of the hearing was given about 24 hours before the hearing. The purpose of the notice requirement of "Rule 6(d) is to prevent a party from being prejudicially surprised by a motion." *Daniel v. Stevens*, 183 W.Va. 95, 104, 394 S.E.2d 79, 88 (1990). In *Daniel*, we found that because the party opposing the motion was not prejudicially surprised by the issue presented in the motion, the lack of notice was harmless. In *Cremeans v. Goad*, 158 W.Va. 192, 194–95,

210 S.E.2d 169, 171 (1974)(3 hours notice insufficient time to prepare for a hearing), we noted that Rule 6(d) is not a hard and fast rule, but sufficient time must be provided so that the parties have time to prepare. The Syllabus of *Cremeans* states:

> While the language of Rule 6(d) of the Rules of Civil Procedure clearly permits a reduction of the time requirements for notice of hearing, where a trial court, in so acting, reduces time requirements to the extent that the party entitled to notice is deprived of all opportunity to prepare for hearing, such action constitutes a denial of due process of law and is in excess of jurisdiction.

The relators-plaintiffs maintain that they were prejudiced because they were unable to submit a brief to the circuit court outlining their position on the substantive question of expert witnesses. Although it appears that a deposition scheduled for early February by the settling defendant of one of his expert witnesses was the reason for holding the hearing, this reason, while justifying some advancement of the hearing, does not justify an immediate hearing. In this case, the relators-plaintiffs were prejudiced because they were unable to prepare for the hearing involving the substantive issue concerning a settlement agreement and the use of expert witnesses and were unable to present their arguments in written form advising the circuit court of West Virginia precedent.

■ Given the language of Rule 6(d) permitting the reduction of notice requirements, we apply an abuse of discretion standard to the orders reducing Rule 6(d)'s notice requirements. On the first issue of the lack of notice under Rule 6(d), we find that the circuit court abused its discretion in holding a hearing when the non-moving parties were given almost no notice and no time to prepare. Based on this finding, we grant a writ prohibiting the circuit court from enforcing its January 24, 1997 ruling.

## C.

### *Use of Expert Witnesses Identified by Settling Defendants*

■ The second issue concerns the use by the remaining defendants of expert wit-

nesses identified by the settling defendant, in violation of the settlement agreement between the plaintiffs and the settling defendant. Our standard of review of evidentiary matters is the well-settled rule stated in Syllabus Point 10 of *Board of Ed. of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990):

> " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983)[, *overruled on other grounds, State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995) ]. Syllabus Point 2, *State v. Peyatt*, [173] W.Va. [317] 315 S.E.2d 574 (1983)." Syllabus Point 7, *State v. Miller*, [175] W.Va. [616] 336 S.E.2d 910 (1985).

*See West Virginia Dept. of Highways v. Mountain, Inc.*, 167 W.Va. 202, 279 S.E.2d 192 (1981); *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976).

■ The issue of use by the remaining defendants of the settling defendant's expert witnesses presents two important competing policies. One policy is based on the principle that " 'the public ... has a right to every man's evidence.' " *U.S. v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884, 891 (1950), *quoting*, John H. Wigmore, *Evidence* § 2192 (3rd ed.). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth. (footnote omitted)." *U.S. v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974).

■ The other policy is the encouragement of settlement rather than litigation to resolve controversies by upholding contracts fairly made that do not contravene public policy. Indeed, "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contra-

vention of some law or public policy." Syllabus Point 1, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968). *In accord* Syllabus Point 1, *Riggle v. Allied Chemical Corp.*, 180 W.Va. 561, 378 S.E.2d 282 (1989); Syllabus Point 2, *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984).

■ However, the dilemma between these competing policies was created by the remaining defendants who then sought rescue from the circuit court claiming a right to all available evidence. At this stage of discovery in a medical malpractice case, the policies are in conflict. But, the dilemma could have been avoided by the remaining defendants. The remaining defendants had the same opportunity as the settling defendant to select their own expert witnesses and to identify those experts to the plaintiffs, or the defendants could have agreed to a formal arrangement to share expert witnesses. Neither was done in this case.

We have addressed the issue of use of the settling defendant's expert witnesses by the remaining defendant on two occasions. In *Riggle v. Allied Chemical Corp., supra*, we upheld the denial of a continuance for the remaining defendant to obtain its own experts. The request for the continuance occurred after Allied, a co-defendant, settled after the first day of trial by a "Mary Carter" settlement agreement.[3] Because of the "Mary Carter" settlement, Allied, who remained as a defendant, "did not present the extensive defense it had originally planned." 180 W.Va. at 564, 378 S.E.2d at 285. In upholding the denial of the continuance we "point[ed] out that appellant had years to prepare its case, and had no right to rely on expert evidence developed by Allied to fight the plaintiffs' claims." 180 W.Va. at 569, 378 S.E.2d at 290. After noting that settlement was a possibility, we said, "if appellant wanted to fight plaintiffs' claim, it could have prepared its own case rather than relying on Allied's experts." *Id.* We found the appel-

**3.** In *Riggle v. Allied*, 180 W.Va. at 563 n. 5, 378 S.E.2d at 284 n. 5, we noted that the name for this type of settlement is derived from *Booth v.* *Mary Carter Paint Co.*, 202 So.2d 8 (Fla.App. 1967), *overruled, Ward v. Ochoa*, 284 So.2d 385 (Fla.1973).

lant "had only itself to blame for the result." *Id.*

A similar approach was taken in *Board of Ed. of McDowell County v. Zando, Martin & Milstead, Inc., supra*, when Zando, Martin & Milstead ("ZMM"), the remaining defendant, attempted to call the expert witnesses of the settling defendant in violation of the settlement agreement. In *Zando*, although the settlement prohibiting the use of the settling defendant's expert witnesses was reached several weeks before trial, ZMM attempted to use these experts at trial. The circuit court granted "ZMM a recess to attempt to obtain an expert of its own, but when trial resumed five days later, ZMM asserted that it had been unable to locate any witnesses who could offer the same testimony. (footnote omitted)." *Zando*, 182 W.Va. at 613, 390 S.E.2d at 812. In *Zando*, we upheld the circuit court's refusal to allow the remaining defendant, ZMM, to use the settling defendant's expert witnesses. In *Zando, id.*, we concluded:

> It is obvious to any sophisticated trial lawyer that in litigation involving multiple defendants there is the likelihood that settlements will occur before trial. To rely on another party defendant's witnesses without some formal agreement as to shared use is to invite the consequences that arose in *Riggle* and in the present case. The end result is that no error can be claimed.

▆ Based on reasoning underlying *Riggle* and *Zando*, we hold that, absent a formal agreement among defendants in a litigation proceeding involving multiple defendants, the circuit court should not generally permit a settling defendant's expert witnesses to testify for the remaining defendants. When a settlement agreement between the settling defendant and the plaintiffs prohibits the continued use of the settling defendant's ex-

pert witnesses by the remaining defendants, the circuit court, subject to Rule 26(b)(4)(B) [1988] of the *West Virginia Rules of Civil Procedure*, should honor that agreement by not permitting the remaining defendants to use or present such information in the preparation for or conduct of the trial.[4]

Two other courts have addressed the question of public policy and an expert witness limitation. The Texas Supreme Court in *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990) rejected the settlement agreement's redesignation of expert witnesses to preclude the witnesses from testifying based on "[t]he primary policy behind discovery is to seek truth so that disputes may be decided by facts that are revealed rather than concealed." However, this approach was rejected in *Wolt v. Sherwood, a Div. Of Harsco Corp.*, 828 F.Supp. 1562, 1567 (D.Utah 1993), which after comparing the Texas Supreme Court's reasoning to our reasoning in *Zando*, said that "the court is persuaded that West Virginia more accurately states the rule that should be followed by this court." The *Wolt* court found that the purposes of discovery were not frustrated by "allowing a plaintiff to purchase the expertise of a settling defendant" because of the availability of the "'exceptional circumstances' [exception] under Fed.R.Civ.P. 26(b)(4)(B). (footnote omitted)." 828 F.Supp. at 1568.[5] The determination of upholding a settlement agreement that precludes the testimony of a settling defendant's expert witnesses "is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Wolt*, 828 F.Supp. at 1568, *quoting, Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir.1984) (discussing *Fed. R.Civ.P.* 26(b)(4)(B)).

In this case, the remaining defendants claim that the reservations contained in their identification of expert witnesses supposedly give them the "right" to use any experts

---

4. Rule 26(b)(4)(B) [1988] of the *West Virginia Rules of Civil Procedure* provides:

   A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of *exceptional circum-*

*stances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.* (emphasis added).

5. The exceptions permitting discovery provided in Rule 26(b)(4)(B) [1988] of the *West Virginia Rules of Civil Procedure* are similar to the exceptions in the current federal rule.

named by any other defendant or party. These declarations are not a formal agreement about sharing expert witnesses; they provide no notice to the plaintiffs, and therefore, they should not be considered adequate preparation in a litigation involving multiple defendants. Such self-serving statements should not deprive the plaintiffs of the settlement bargain which included the removal of the settling defendant's expert witnesses.[6] We note that in this case the remaining defendants may still have the time and the opportunity to develop their own defense. The effect of our holding in this case is simply to prevent the remaining defendants from using the trial preparation of the settling defendant, who agreed not to allow such use in the settlement agreement.

We find that the circuit court abused its discretion in allowing the remaining defen-

dants to use the settling defendant's expert witnesses in violation of the settlement agreement. The plaintiffs should not be deprived of the settlement bargain they gained by their strategy of *divide et impera*.[7]

For the above stated reasons, the petition for a writ of prohibition is granted. The underlying case shall proceed below in accordance with the principles set forth in this opinion.

Writ granted.

---

**6.** In his supplemental response, remaining defendant Pierson argues that the circuit court's ruling had no effect on the settlement because, by order entered on March 18, 1997, the settling defendant was dismissed with prejudice. However, the plaintiffs by petition filed on February 18, 1997, were already seeking review of the circuit court's order allowing use of the expert witnesses.

**7.** According to J. Bartlett, *Familiar Quotations* (16th ed.1992) 118, *divide et impera* [divide and rule] is an ancient anonymous political maxim cited by Machiavelli.