539 S.E.2d 478

Steven M. ROBERTS; Deborah S. Roberts, His Wife; and Jennifer M. Roberts and Steven Michael Roberts, Jr., His Children, Plaintiffs Below, Appellants,

v.

CONSOLIDATION COAL COMPANY, A Delaware Corporation; and the Hemscheidt Corporation, A New York Corporation; and John Does One Through Ten, Defendants Below, Appellees.

No. 26850.

Supreme Court of Appeals of West Virginia.

Submitted June 13, 2000.

Decided July 19, 2000.

**224**

Crystal Hawkins Castleberry, Morgantown, West Virginia, Gregory A. Gellner, Gellner Law Offices, Wheeling, West Virginia, Attorneys for the Appellant, Steven M. Roberts.

R. Dean Hartley, James M. O'Brien, Hartley & O'Brien, Wheeling, West Virginia, Counsel for Amicus Curiae, West Virginia Trial Lawyers Association.

John L. McClaugherty, Alvin L. Emch, Mychal S. Schulz, Jackson & Kelly, Charleston, West Virginia, Counsel for Amicus Curiae, The West Virginia Chamber of Commerce.

Robert M. Steptoe, Jr., Amy M. Smith, Steptoe & Johnson, Clarksburg, West Virginia, Robert M. Vukas, Senior Counsel, Consol, Inc., Pittsburgh, Pennsylvania, Attorneys for the Appellee, Consolidation Coal Company.

Thomas Patrick Maroney, Charleston, West Virginia, Counsel for Amicus Curiae, West Virginia State Labor Federation, AFL–CIO.

DAVIS, Justice:

The plaintiff below and appellant herein, Steven M. Roberts [hereinafter "Roberts"], appeals the September 16, 1998, judgment order of the Circuit Court of Monongalia County which upheld a jury verdict returned against the defendant below and appellee herein, Consolidation Coal Company [hereinafter "Consol"]. During the appellate proceedings in this Court, Consol moved to dismiss Roberts' appeal, alleging that his petition for appeal was not timely filed. Having determined that Roberts' appeal was, in fact, timely filed, as will be explained more fully in Section III.A., *infra*, we deny Consol's motion. Insofar as Roberts' appeal is concerned, he has assigned numerous errors for our consideration, namely that the circuit court erred (1) in permitting Consol to assert a contributory negligence defense to the deliberate intention action he filed pursuant to W. Va.Code §§ 23–4–2(b)–(c) (1991) (Cum.Supp.1991); (2) by failing to obtain a final ruling from the discovery commissioner to whom certain discovery issues had been assigned for resolution; (3) in not bifurcating the liability and damages portions of the trial from the determination of the workers' compensation offset; (4) by admitting some, and excluding other, various evidentiary matters; and (5) by upholding the jury's verdict despite insufficient evidence therefor and an inadequate damages award thereon. Upon a review of the parties' arguments, the pertinent authorities, and the record submitted for appellate consideration, we affirm, in part, and reverse, in part, the judgment of the Circuit Court of Monongalia County and remand this case for a new trial. In summary, we conclude that neither a defense of contributory negligence nor a defense of deliberate intention is available to an employer defending against a deliberate intention cause of action. We further find that the defense of self-inflicted injury, set forth in W. Va.Code § 23–4–2(a) (1991) (Cum.Supp.1991) and available to employers defending against an employee's deliberate intention action, contemplates an injury that has been intentionally self-inflicted by the employee.

## I.

## FACTUAL AND PROCEDURAL HISTORY[1]

The evidence presented to the jury suggests the following facts. On March 16, 1994, Roberts was injured in a mining accident while working at Consol's Blacksville No. 2 mine. The accident occurred when the

---

1. Additional facts will be incorporated in our discussion of the legal issues presented by this appeal. *See infra* Section III.

longwall mining shield Roberts was operating, which had been manufactured by The Hemscheidt Corporation [hereinafter "Hemscheidt"], stopped functioning. After attempting to restart the shield electronically, Roberts tried to correct the problem manually. Ultimately, the equipment began functioning, causing Roberts to be crushed by the ten ton shield. As a result of this accident, Roberts sustained severe injuries to his neck and back, which have required his spinal column to be reinforced by numerous steel rods. Following extensive rehabilitation, Roberts has partially regained his ability to walk, but he requires the assistance of a walker. Nevertheless, he is physically unable to return to his former employment.[2]

On March 13, 1996, Roberts, his wife, and their two children filed suit against Consol and Hemscheidt in the Circuit Court of Monongalia County. In this action, the plaintiffs charged Consol with deliberate intention, in accordance with W. Va.Code §§ 23–4–2(b)–(c) (1991) (Cum.Supp.1991), and alleged, against Hemscheidt, that the mining shield in question was a defective product. During the course of litigation, Roberts' wife and children were dismissed from the suit. In addition, Hemscheidt settled with Roberts shortly before the trial of this case, which resulted in Hemscheidt's subsequent dismissal, as well.

Following a nine-day jury trial of this matter, the jury found Consol to be 51% liable and Roberts to be 49% at fault for the March 16, 1994, accident and Roberts' resultant injuries. The jury also awarded Roberts damages in the amount of $420,500.00.[3] The portion of the damages recoverable by Roberts, i.e., 49%, was then weighed against the monies he had received from his settlement with Hemscheidt and his Workers' Compensation benefits. As a result of these set-offs, Roberts received no monetary recovery from

Consol. The circuit court upheld the jury's verdict and damages award by a judgment order, which was entered on September 16, 1998.

Thereafter, Roberts and Consol both filed post-trial motions.[4] Upon the circuit court's denial of Roberts' motion for a new trial and the court's extension of the applicable appeal period, Roberts appeals to this Court.

## II.

### STANDARD OF REVIEW

Procedurally, this case comes to this Court for review from a jury verdict entered by the Circuit Court of Monongalia County.[5] Typically, when a case has been determined by a jury, the questions of fact resolved by the jury will be accorded great deference.

" 'An appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence.' Point 2, Syllabus, *Stephens v. Bartlett,* 118 W.Va. 421[, 191 S.E. 550 (1937)]." Syllabus point 1, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963).

Syl. pt. 1, *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720 (1998), *cert. denied,* 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999). *See also* Syl. pt. 4, *Stenger v. Hope Natural Gas Co.,* 141 W.Va. 347, 90 S.E.2d 261 (1955) ("On appellate review of a case wherein a jury verdict has been rendered, it is the duty of the reviewing court to treat the evidence as being favorable to the verdict '. . . and give it the strongest probative force of which it will admit. So long as there is nothing so inherently or otherwise manifestly improbable in the character of the evidence as to justify the court in ignoring it, . . .'. *Roberts v. Toney,*

---

2. Roberts has received Workers' Compensation benefits in connection with this injury, but it is unclear whether he has received either a permanent partial disability award and/or a permanent total disability award.

3. The jury verdict form lists a total damages award of $450,000.00, but the sum of the total damages found equals only $420,500.00.

4. For further discussion of the facts and circumstances surrounding the parties' post-trial motions, see Section III.A., *infra.*

5. Additional standards of review governing the more specific assignments of error alleged herein will be included in our discussion of those alleged errors. *See infra* Section III.

100 W.Va. 688, 693[, 131 S.E. 552, 553 (1926) ].". Accordingly,

> [i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736.

■ By contrast, we accord a plenary review to a trial court's decision of questions of law: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) ("In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. *Questions of law are subject to a de novo review.*" (emphasis added)). With these standards in mind, we proceed to consider the parties' arguments on appeal.

### III.

### DISCUSSION

The parties herein have presented two separate and distinct issues for our consideration. First, Roberts appeals the circuit court's order entering the jury's verdict and complains that said verdict is fraught with errors, including the circuit court's allowance of a contributory negligence defense to his deliberate intention action against Consol. Second, Consol moves to dismiss Roberts' appeal, complaining that he did not timely file his appeal with this Court. As the resolution of the motion to dismiss could be dispositive of this proceeding, we will first consider Consol's motion and then, if the circumstances so warrant, proceed to determine the merits of Roberts' assignments of error.[6]

### A. Motion to Dismiss

Pursuant to Rule 18 of the West Virginia Rules of Appellate Procedure, a party may move to dismiss an appeal pending in this Court:

> At any time after the granting of an appeal, any party to the action appealed from may move the Supreme Court to dismiss the appeal on any of the following grounds: (1) failure to properly perfect the appeal; (2) failure to obey an order of the Court; (3) failure to comply with these rules; (4) lack of an appealable order, ruling, or judgment; or (5) lack of jurisdiction....

W. Va. R.App. P. 18(a). Relying on this authority, Consol urges this Court to dismiss Roberts' appeal based upon his failure to comply with the requirements of W. Va. R. Civ. P. 59(b) and 60(b) and W. Va. R.App. P. 3(a).

1. **West Virginia Rules of Civil Procedure 59(b) and 60(b)**

In support of its motion to dismiss Roberts' appeal, Consol first asserts that Roberts failed to file his motion for a new trial within the time period set forth in W. Va. R. Civ. P. 59(b). Additionally, Consol contends that, because Roberts' post-trial motion was untimely, it was effectively converted into one under W. Va. R. Civ. P. 60(b), the requirements of which he also has not satisfied. *See* Syl., *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 273, 201 S.E.2d 257 (1973) ("If a motion for judgment or for a new trial is not timely made under Rule 50(b), R.C.P., or Rule 59(b), R.C.P., a motion may be considered under Rule 60(b) if it states grounds sufficient for relief thereunder.").

■ Following the conclusion of the jury trial underlying the instant appeal, the circuit

---

6. At this juncture, we wish to note the appearance of the various Amici Curiae in this case. Their various arguments will be considered in conjunction with those of the parties with whom they are most closely aligned.

court entered its judgment order upholding the jury's verdict on September 16, 1998. Pursuant to Rule 59(b) of the West Virginia Rules of Civil Procedure, a motion for a new trial must be filed within ten days of the entry of the judgment to which the motion relates: "Any motion for a new trial shall be filed not later than 10 days after the entry of the judgment." This filing period has been declared to be mandatory and unalterable by the presiding circuit court. *See* W. Va. R. Civ. P. 6(b).[7] In other words,

> [t]he requirement of Rule 59(b) of the Rules of Civil Procedure that a motion for a new trial shall be served not later than ten days after entry of the judgment is mandatory and jurisdictional. The time required for service of such a motion cannot be extended by the court or by the parties.

Syl. pt. 1, *Boggs v. Settle,* 150 W.Va. 330, 145 S.E.2d 446 (1965). *See also* Syl. pt. 3, *Miller v. Triplett,* 203 W.Va. 351, 507 S.E.2d 714 (1998) ("Rule 59(b) of the West Virginia Rules of Civil Procedure states, 'A motion for a new trial shall be served not later than 10 days after the entry of the judgment[,]' is designed to give trial courts the opportunity to correct errors made at trial and to obviate the need for appeal. Failure to comply with this provision bars appeal of all errors occurring during the trial which a party might have assigned as grounds in support of a motion for a new trial."). Thus, Roberts' motion for a new trial should have been filed by September 28, 1998.

■ Despite this mandatory time constraint, but within its duration, the parties mutually assented to an extension of this filing period, and the circuit court entered an agreed order, on September 23, 1998, extending the filing date for the parties' post-trial motions until October 6, 1998. In accordance with this amended deadline, Roberts filed his post-trial motion for a new trial on October 6, 1998. Because Roberts' motion was not filed within the ten days immediately following the circuit court's entry of judgment, even though it was filed within the extended deadline for such motions, Consol argues that Roberts' Rule 59(a) motion for a new trial was nevertheless untimely and that it was effectively converted into one for relief under W. Va. R. Civ. P. 60(b). We disagree.[8]

■ Our reasons for finding Roberts' motion for a new trial to have been properly filed are two-fold: (1) our case law interpreting Rule 59(b) permits late-filed motions if they are accompanied by specific, enumerated circumstances and, perhaps more importantly, (2) Consol acquiesced in the delay of which it now complains. First and foremost, we previously have held that

> [w]here a trial court makes an erroneous ruling extending a time period under the Rules of Civil Procedure, and one of the parties relies on the ruling, such party will not be foreclosed from further pursuit of his claim because of this error. This is particularly true where the opposing party acquiesces or fails to object to the erroneous ruling at the time it was made.

Syl. pt. 1, *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981). In the proceedings underlying the instant appeal, not only did Roberts rely upon the circuit court's errone-

---

7. Rule 6(b) of the West Virginia Rules of Civil Procedure provides, in relevant part:

 [w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, all the parties to the action, by written stipulation filed with the court, may agree at any time to a different period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result

 of excusable neglect; *but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.* (Emphasis added).

8. Because we ultimately find Roberts' motion for a new trial to have been proper under W. Va. R. Civ. P. 59(b) and our case law interpreting this rule, we need not consider further Consol's contention that Roberts' post-trial motion failed to satisfy the criteria of W. Va. R. Civ. P. 60(b). *See, e.g., Campbell v. Kelly,* 157 W.Va. 453, 477, 202 S.E.2d 369, 383 (1974) ("declin[ing] to pass upon ... question as it [wa]s not necessary to the resolution of the other issues of th[e] case").

ous ruling extending the time period within which to file post-trial motions, but Consol, itself, agreed to such an extension. Thus, we are guided by our prior precedent in this regard in finding Roberts' motion to have been properly filed.

Second, we decline to adopt Consol's notion that Roberts' motion was untimely filed because, as we noted above, Consol acquiesced to the error of which it now complains.

"Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error. The idea of invited error is . . . to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the [proceedings] use the error to set aside its immediate and adverse consequences.

*State v. Crabtree,* 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996). *Accord In re Tiffany Marie S.,* 196 W.Va. 223, 233, 470 S.E.2d 177, 187 (1996) ("[W]e regularly turn a deaf ear to error that was invited by the complaining party." (citation omitted)); *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) (finding "the appellant cannot benefit from the consequences of error it invited"). To be clear, this Court does not counsel the late filing of new trial

motions outside of the express ten day filing period contained in W. Va. R. Civ. P. 59(b). However, neither do we condone a party's attempt to assert as error against its adversary a circuit court's ruling extending the post-trial motion filing period where *both* parties participated in securing the erroneous order and *both* parties benefitted directly from the enlarged filing period.[9]

## 2. West Virginia Rule of Appellate Procedure 3(a)

Alternatively, Consol contends that Roberts' appeal should be dismissed as untimely because he failed to file his appeal within the time provided by W. Va. R.App. P. 3(a). Pursuant to Rule 3(a) of the West Virginia Rules of Appellate Procedure,

[n]o petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than *four months* before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered, whether the State be a party thereto or not; provided, that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and re-extend such period, not to exceed a total extension of *two months,* if a request for the transcript was made by the party seeking an appeal or supersedeas within thirty days of the entry of such judgment, decree or order. . . .[10]

9. Consol, itself, also profited from the extended post-trial motion period by filing its own post-trial motion to alter or amend the judgment on October 7, 1998. Our perusal of the record in this regard suggests that Consol's motion, which requested relief pursuant to W. Va. R. Civ. P. 59(e) and which also was due within ten days after the court's entry of judgment, was technically filed outside of the extended filing period sanctioned by the circuit court. *See* W. Va. R. Civ. P. 59(e) ("Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."). Since Roberts does not complain of this error on appeal, though, we are not obliged to provide it further treatment. *See, e.g.,* Syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs

on appeal may be deemed by this Court to be waived.").

10. *Accord* W. Va.Code § 58–5–4 (1998) (Supp. 1999) ("No petition shall be presented for an appeal from any judgment rendered more than four months before such petition is filed with the clerk of the court where the judgment being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order."); Syl. pt. 1, in part, *Coonrod v. Clark,* 189 W.Va. 669, 434 S.E.2d 29

(Emphasis added) (footnote added). Thus, by the express terms of Rule 3(a), Roberts was required to file his petition for appeal within four months of the circuit court's entry of judgment on September 16, 1998, *i.e.*, no later than January 18, 1999, as no extension had yet been granted by the circuit court.

■ We note, however, Roberts filed a Rule 59(a) post-trial motion for a new trial in the underlying action; therefore, the appeal period did not start to run until after the circuit court had finally decided his motion.

A motion made pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure and filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for an appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion.

Syl. pt. 4, *McCormick v. Allstate Ins. Co.*, 194 W.Va. 82, 459 S.E.2d 359 (1995).[11] Therefore, the court's March 8, 1999, order denying Roberts' new trial motion reactivated the appeal period and effectively required Roberts to file his appeal within four months thereof, or by July 9, 1999. This deadline, though, was also subject to a maximum two month extension. *See* W. Va. R.App. P. 3(a).

And, in fact, such an extension was granted. By order entered July 9, 1999, the circuit court granted Roberts an additional two months within which to file his petition for appeal. Accordingly, the ultimate deadline for Roberts' appeal was September 10, 1999. As a result of this final appeal period, Roberts filed his petition for appeal on September 8, 1999.

Nevertheless, Consol continues to argue that Roberts' appeal was untimely. First, Consol suggests that because Roberts' Rule 59(a) motion for a new trial was untimely, it was effectively converted into one for relief under Rule 60(b). *Cf.* Syl. pt. 3, *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992) ("A motion which would otherwise qualify as a *Rule 59(e)* motion that is not filed and served within ten days of the entry of judgment is a Rule 60(b) motion regardless of how styled and does not toll the four month appeal period for appeal to this court." (emphasis added)). This contention, however, we have considered and disposed of in the preceding section. *See supra* Section III. A.1. Although Roberts' motion was not filed within the ten day period mandated by Rule 59(b), we do not find this dereliction, or the

(1993) ("The appropriate procedure for a petition for appeal to this Court to be timely presented, under *W. Va.Code* 58-5-4 [1990] and Rule 3 of the *Rules of Appellate Procedure* [1991], requires the petition to be filed with the clerk of the circuit court where the judgment, decree or order being appealed was entered within four months of the entry of judgment or within such additional period, up to two months, as may be authorized pursuant to *W. Va.Code* 58-5-4 [1990]."). *Cf.* Syl. pt. 1, *West Virginia Dep't of Energy v. Hobet Mining & Constr. Co.*, 178 W.Va. 262, 358 S.E.2d 823 (1987) (" 'Where the Legislature has prescribed limitations on the right to appeal, such limitations are exclusive, and cannot be enlarged by the court.' *State v. DeSpain*, 139 W.Va. 854[, 857–58], 81 S.E.2d 914, 916 (1954)."); *Asbury v. Mohn*, 162 W.Va. 662, 665, 256 S.E.2d 547, 548–49 (1979) ("The statute dealing with appella[te] review [*Code*, 58-5-4] was found jurisdictional and mandatory: '[T]he appellate court does not acquire jurisdiction and cannot entertain an appeal unless the appeal petition is filed within the prescribed appeal period.' " (quoting *State v. Legg*, 151 W.Va. 401, 406, 151 S.E.2d 215, 219 (1966)) (footnote omitted) (additional citations omitted)).

11. *Accord* W. Va. R. Civ. P. 72 ("The full time for filing a petition for appeal commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: ... granting or denying a motion under Rule 59 to alter or amend the judgment; or granting or denying a motion for a new trial under Rule 59."); Syl. pt. 2, *Sothen v. Continental Assurance Co.*, 147 W.Va. 458, 128 S.E.2d 458 (1962) ("Under the Rules of Civil Procedure, Rule 72, the full time for filing a petition for appeal commences to run and is to be computed from the entry of the judgement order, unless some timely motion is made under the rules referred to in Rule 72 which would suspend the commencement of the appeal period."). *See also* Syl. pt. 3, *McCormick v. Allstate Ins. Co.*, 194 W.Va. 82, 459 S.E.2d 359 (1995) (" 'Under W. Va.Code, 58-5-1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' Syllabus Point [3], *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995).").

circuit court's extension thereof, to be fatal to his request for relief.

■ Consol's second basis for contending that Roberts' appeal is untimely is its assertion that the circuit court lacked jurisdiction to grant Roberts a two month extension because, it alleges, the appeal period expired before the court entered its July 9, 1999, order. With this argument, we also disagree. At first blush, it appears that the four month appeal period, within which such an extension must be granted, see W. Va. R.App. P. 3(a), commenced on March 8, 1999, and expired on July 8, 1999. Based on these dates, the circuit court's extension order would have been outside of the appeal period. This calculation, however, is erroneous. According to Rule 16(a) of the West Virginia Rules of Appellate Procedure,

> [i]n computing any period of time prescribed by these rules, by an order of the Supreme Court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period extends until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. . . .

Hence, the four month appeal period emanating from the circuit court's March 8, 1999, order did not commence on that date, but rather on the day thereafter. Counting four months from March 9, 1999, then, yields a final deadline date of July 9, 1999. Because the circuit court's order granting a two month extension was entered within the appeal period, the court acted within its authority. Likewise, Roberts' petition for appeal, which was filed within the two month extension, also was timely. Finding no basis for granting its requested relief, we accordingly deny Consol's motion to dismiss Roberts' appeal.

### B. Errors Alleged on Appeal

On appeal to this Court, Roberts assigns numerous errors to the actions of the circuit court during the trial underlying the instant appeal. We will begin our discussion of these alleged errors with a consideration of whether the defense of contributory negligence is available to an employer defending his/her employee's deliberate intention lawsuit. Thereafter, we will examine the remaining errors assigned by Roberts.

### 1. Deliberate Intention Cause of Action and the Defense of Contributory Negligence

■ For his first assignment of error, Roberts argues that the circuit court erred by denying his motion to strike Consol's defense of contributory negligence.[12] Rule 12(f) of the West Virginia Rules of Civil Procedure allows a party to move to strike a defense asserted by the opposing party:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Pursuant to this rule, Roberts, on May 22, 1998,[13] moved to strike Consol's affirmative defense of contributory negligence, which it had asserted in its answer to Roberts' complaint.[14] Denying Roberts' motion, the circuit court, by order entered July 27, 1998, ruled

---

**12.** It also appears from Roberts' brief that he asserts an associated instructional error relating to the circuit court's allowance of this defense. As we can resolve this query solely on the basis of his Rule 12(f) motion to strike, however, we need not consider the alleged instructional error. See supra note 8.

**13.** Although Rule 12(f) indicates that a motion to strike an insufficient defense should be made "within 20 days after the service of the pleading upon the party," W. Va. R. Civ. P. 12(h)(2) allows that "an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

**14.** Roberts also moved to strike Consol's affirmative defense of assumption of the risk. See infra note 18.

[i]nasmuch as the defendant Consolidation Coal Company's Fifth [15] and Twelfth [16] defenses appeared to be the same comparative fault-type defenses [17] worded slightly differently, the Court considered them simultaneously. The Court found plaintiffs' argument well taken and held that the defendant Consolidation Coal Company will not be permitted to offer evidence as to the comparative fault of Mr. Roberts as a reduction or bar to his damages unless the defendant Consolidation Coal Company offers evidence of deliberate intent under the same five factor test or standard of conduct that the plaintiff will be bound to prove as against Consolidation Coal Company. The Court will not permit a comparison of degrees of conduct by Mr. Roberts which are less than degrees of conduct which must be proven as against Consolidation Coal Company. In other words, Consolidation Coal Company may not offer negligent acts of Mr. Roberts in its presentation of comparative fault.

To the extent that the comparative fault defenses of Consolidation Coal Company attempt to use conduct of Mr. Roberts of a negligent, or other degree of fault less than the proof of all five elements of the five factor test found in West Virginia Code § 23–4–2 (as alleged by plaintiffs), the defenses are stricken. The Court will allow the jury in this matter to consider comparative fault only if Consolidation Coal Company has shown that each of the elements of the five factor test in West Virginia Code § 23–4–2 apply to the conduct of Mr. Roberts via appropriate evidence.[18]

(Footnotes added). Consequently, Consol was then permitted, during the jury trial of Roberts' deliberate intent action, to defend by raising the issue of the plaintiff's contributory negligence.

■■■■■■■ Ordinarily, a Rule 12(f) motion must be considered solely in the context of the pleadings, without resort to extrinsic evidence and the like. Syl. pt. 3, *Toler v. Shelton*, 159 W.Va. 476, 223 S.E.2d 429 (1976) ("A motion under Rule 12(f) W. Va. R.C.P., goes solely to the sufficiency of defenses as they are presented in the pleadings and matters outside the pleadings, such as affidavits, may not be used or considered."). In this sense, a court is expected to determine whether a particular defense is proper based upon the conduct alleged in the complaint and the law applicable thereto. Thus, oftentimes a circuit court considering a Rule 12(f) motion is required to decide a question of law, to which ruling we apply a *de novo* standard of review. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

**15.** In its Fifth Defense, Consol pleaded that "[a]lthough CCC [Consol] denies it committed any conduct actionable under W. Va.Code § 23–4–2, plaintiffs are barred from any recovery in this action because plaintiff Steven M. Roberts' fault equaled or exceeded the fault of CCC."

**16.** For its Twelfth Defense, Consol averred that "[a]lthough CCC [Consol] specifically denies any fault, negligence or liability to plaintiffs which is actionable, plaintiffs are barred from any recovery because the comparative fault on the part of plaintiff Steven M. Roberts equaled or exceeded the combined fault of all other parties."

**17.** In *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), we undertook an extensive analysis of the differences between contributory negligence and comparative fault. *Id.*, 163 W.Va. at 334–42, 256 S.E.2d at 881–85. Finding merits to, as well as difficulties with, both doctrines in their purest forms, we elected to adopt a modified theory of contributory negligence: "A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." Syl. pt. 3, *Bradley*, 163 W.Va. 332, 256 S.E.2d 879. *See also id.*, 163 W.Va. at 342, 256 S.E.2d at 885 (announcing Court's departure from former rule of contributory negligence). Therefore, for ease of reference and to maintain consistency with the law of this State, we will refer to the defense at issue in this assignment of error as one of contributory negligence, though we remain mindful that the defense allowed by the circuit court does not contemplate such a defense in its truest sense.

**18.** By contrast, the circuit court prohibited Consol from asserting the affirmative defense of assumption of the risk. *See Norris v. ACF Indus., Inc.*, 609 F.Supp. 549, 553 (S.D.W.Va.1985) ("hold[ing] that the defense of assumption of the risk is inapplicable, as a matter of law, in an action brought pursuant to *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978)").

In his complaint, Roberts averred that the accident of March 16, 1994, and his injuries resulting therefrom, could be attributed to Consol's violation of W. Va.Code §§ 23–4–2(b), (c)(2)(ii) (1991) (Cum.Supp.1991).[19] This statute provides, in relevant part:

(b) If injury or death results to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

. . . .

[ (c) ](2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition. . . .

■■■■■■ As is our usual custom when faced with an issue involving a legislative enactment, we first seek to ascertain the intent underlying the provision. Syl. pt. 6, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999) (" 'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)."). Once we have gleaned such an intent, we must then apply the statute as written, without further construction thereof, where its language is plain.

In accordance with general principles relating to construction of statutes, it is settled by prior decisions of this Court that

**19.** Shortly after the events giving rise to the instant appeal, W. Va.Code § 23–4–2 (1991) (Cum.Supp.1991) was amended. *See* W. Va. Code § 23–4–2 (1994) (Repl.Vol.1998). These alterations primarily have been grammatical in nature and have not affected the substance of those portions of the statute relevant to our decision herein. *See id.*

when the language of a workmen's compensation statute is clear and unambiguous and the legislative intent is clearly disclosed by such language, it is the duty of the courts to ápply such a statute according to the legislative intent therein clearly expressed.

*Bounds v. State Workmen's Compensation Comm'r,* 153 W.Va. 670, 676, 172 S.E.2d 379, 383 (1970) (citations omitted). *See also* Syl. pt. 3, *Michael v. Marion County Bd. of Educ.,* 198 W.Va. 523, 482 S.E.2d 140 (1996) (" 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968).").

██ Looking to another portion of W. Va.Code § 23–4–2, namely subsection (c)(1), we find the Legislature's intention to be expressly stated:

It is declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even though the injury or death of an employee may be caused by his own fault or the fault of a co-employee; that the immunity established in sections six and six-a [§§ 23–2–6 and 23–2–6a], article two of this chapter, is an essential aspect of this workers' compensation system; that the intent of the Legislature in providing immunity from common law suit was and is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided; that, in enacting the immunity provisions of this chapter, *the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and*

*containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct;* and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

W. Va.Code § 23–4–2(c)(1) (emphasis added). In fact, we have specifically recognized that a deliberate intention action is sanctioned and governed by the workers' compensation statutory law in this State, and not by the common law.[20]

W. Va.Code 23–4–2(c) (1991) represents the wholesale abandonment of the common law tort concept of a deliberate intention cause of action by an employee against an employer, to be replaced by a statutory direct cause of action by an employee against an employer expressed within the workers' compensation system.

Syl. pt. 2, *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996). Having ascertained the legislative intent of W. Va. Code § 23–4–2(c), and finding the language of such provision to be plain, we proceed to consider the merits of Roberts' argument.

██ Referring again to the above-quoted language, we find that, in enacting this provision, the Legislature intended "to establish a system which compensates even though the injury or death of an employee may be caused by his own fault." W. Va. Code § 23–4–2(c)(1). Simply stated, "[t]he Workmen's Compensation Act, Code, Chapter 23, as amended, insures employees, within the provisions of the Act, against the negligence of their employers and against the operation of the doctrines of contributory negligence and assumption of the risk, and the fellow servant rule." Syl. pt. 7, *Thompson v. State Compensation Comm'r,* 133 W.Va. 95, 54 S.E.2d 13 (1949). *Accord Long*

**20.** For further discussion of the history of the deliberate intention cause of action under the workers' compensation law in this State, see *Blake v. John Skidmore Truck Stop, Inc.,* 201 W.Va. 126, 130–32, 493 S.E.2d 887, 891–93 (1997), and *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 140–44, 475 S.E.2d 138, 140–44 (1996). *See generally State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 537, 514 S.E.2d 176, 188 (1999) (discussing history of workers' compensation law).

*Flame Coal Co. v. State Compensation Comm'r,* 111 W.Va. 409, 413, 163 S.E. 16, 17–18 (1932) ("By the Compensation Act, the employee is insured not only against injuries from negligence of the employer but also against the result of his own contributory negligence, and his common law assumption of risk."). As an employee's cause of action for deliberate intention comes squarely within the parameters of the workers' compensation statutes, it seems only fitting, then, that an employer's defenses to such an action should likewise be governed by the pertinent statutory law.

It has been held repeatedly by this Court that the right to workmen's compensation benefits is based wholly on statutes, in no sense based on the common law; that such statutes are sui generis and controlling; that the rights, remedies and procedures thereby provided are exclusive; that the commissioner is authorized to award and pay benefits and that a claimant is authorized to demand payment of benefits only in such manner and in such amounts as are authorized by applicable statutes.

*Bounds v. State Workmen's Compensation Comm'r,* 153 W.Va. at 675, 172 S.E.2d at 382–83 (citations omitted). *Accord Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986) ("The right to workers' compensation benefits is wholly a creature of statute[.]"); Syl. pt. 2, in part, *Dunlap v. State Compensation Dir.,* 149 W.Va. 266, 140 S.E.2d 448 (1965) ("The right to workmen's compensation benefits is wholly statutory.").

A review of the body of workers' compensation statutes indicates that there appear to exist few preclusions to an employee's recovery of benefits. Primarily, an employee's claim must come within the rubric of an occupational injury or disease to entitle him/her to an award workers' compensation benefits. *See* W. Va.Code § 23–4–1 (1989) (Repl. Vol.1998) (directing workers' compensation commissioner to make disbursements "to the employees of employers subject to this chap-

ter, which employees have received personal injuries in the course of and resulting from their covered employment or to the dependents, if any, of such employees in case death has ensued"). Likewise, such work-related injury must be a compensable occupational injury or disease. *See, e.g.,* W. Va.Code § 23–4–1e(b) (1993) (Repl.Vol.1998) (exempting from compensable claims injuries or diseases sustained by an incarcerated individual "in the course of and resulting from his or her work during such period of incarceration which work is imposed by the administration of the penitentiary or jail"); W. Va.Code § 23–4–1f (1993) (Repl.Vol.1998) (precluding recovery for "mental-mental claims"); W. Va. Code § 23–4–9b (1986) (Repl.Vol.1998) (excluding from compensability preexisting "definitely ascertainable impairment resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling"). *Cf.* W. Va.Code § 23–4–19 (1993) (Repl.Vol.1998) (criminalizing the wrongful procurement of workers' compensation benefits and denominating such crime a felony).[21]

■ Where a claim for benefits would otherwise presumably be compensable, an employer has at its disposal two definitely-enumerated defenses to the employee's receipt of benefits:

Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workers' compensation fund, or to direct compensation from any employer making the election and receiving the permission mentioned in section nine [§ 23–2–9], article two of this chapter, or otherwise under the provisions of this chapter, on account of any personal injury to or death to any employee caused by *a self-inflicted injury or the intoxication of such employee* ....

W. Va.Code § 23–4–2(a) (emphasis added).[22] With respect to an employee's "self-inflicted

---

**21.** We caution litigants, however, that this list is not intended as an exhaustive recitation of the instances in which a workers' compensation claimant's claim may be precluded and is intended merely to be illustrative of the factors which

may limit or altogether deny a claimant's right of recovery.

**22.** This remedial language is in sharp contrast to the prior version of this provision which prohibited an employee's recovery

injury," we wish to clarify the precise nature of such an injury that would preclude an employee's receipt of workers' compensation benefits. A "self-inflicted injury," such as would bar recovery, is an *intentionally*-inflicted injury. It is not a negligently-inflicted injury as the governing statutes specifically establish a no-fault system of workers' compensation. *See* W. Va.Code § 23–4–2(c)(1) (announcing intent "to establish a system which compensates even though the injury or death of an employee may be caused by his own fault or the fault of a co-employee"). *See also* Syl. pt. 4, *Smith v. Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (" 'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' *Syllabus* point 14., *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)."); Syl. pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925) ("It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.").

██ Be that as it may, a self-inflicted injury cannot be equated with conduct committed with "deliberate intention" *per se*, as that term is used in reference to an employee's claim against his/her employer in accordance with W. Va.Code §§ 23–4–2(b)(c). This is so because the Legislature, in no uncertain terms, construes "deliberate intention" to be chargeable solely to an employer and not to an employee. *See, e.g.*, W. Va. Code § 23–4–2(b) (referring to "the deliberate intention of his *employer*" (emphasis added)); W. Va.Code § 23–4–2(c)(2) (indicat-

ing statutory immunity "may be lost only if the *employer or person against whom liability is asserted* acted with 'deliberate intention' " (emphasis added)). In any event, an employer asserting an employee's self-inflicted injury as a defense to his/her claim for benefits must establish that the injury alleged to have been self-inflicted is the proximate cause of the occupational illness or disease for which the employee seeks benefits. *See Hall v. State Workmen's Compensation Comm'r*, 172 W.Va. 87, 89, 303 S.E.2d 726, 727 (1983) (recognizing that "*W. Va. Code*, 23–4–2 [1969] expressly states that an employee's death, which results from a self-inflicted injury, is not compensable" (footnote omitted)). *But see Hall*, 172 W.Va. at 89, 303 S.E.2d at 727 (observing that "the general rule, to which the overwhelming majority of jurisdictions adhere, allows compensation if a substantial causal relationship can be shown to exist between a worker's employment and that worker's suicide" (footnote omitted)); Syl. pt. 1, *id.* ("An employee's suicide which arises in the course of and results from covered employment is compensable under *W. Va.Code*, 23–4–1 [1974], provided, (1) the employee sustained an injury which itself arose in the course of and resulted from covered employment, and (2) without that injury the employee would not have developed a mental disorder of such degree as to impair the employee's normal and rational judgment, and (3) without that mental disorder the employee would not have committed suicide."); *Prince v. Compensation Comm'r*, 123 W.Va. 67, 72, 13 S.E.2d 396, 399 (1941) (Fox, J., dissenting) (suggesting that "[t]he only distinction between self-inflicted injury and willful misconduct is that in one case the injury is the result of a deliberate act of the party, whereas in the other he ordinarily places himself in position to receive the injury through other agencies").

on account of any personal injury to or death to any employee caused by a self-inflicted injury, willful misconduct, willful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner of labor or director of the department of mines, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, willful self-expo-sure in case of occupational pneumoconiosis or other occupational disease, as defined herein, or the intoxication of such employee, or the failure of such employee to use or make use of any protective or safety appliance or appliances prescribed by the commissioner and furnished by the employer for the use of or applicable to such employee....

W. Va.Code § 23–4–2 (1969) (Repl.Vol.1978).

Apart from intoxication and a self-inflicted injury, however, the governing statutes do not provide employers with any other defenses to a claim for workers' compensation benefits.[23] Similarly, our adoption, by way of implication, of additional defenses sounding in contributory negligence would be inconsistent with the definite legislative intent to "to establish a system which compensates even though the injury or death of an employee may be caused by his own fault." W. Va.Code § 23–4–2(c)(1). Applying the plain statutory language, then, we hold that when an employee asserts a deliberate intention cause of action against his/her employer, pursuant to W. Va.Code §§ 23–4–2(b)–(c) (1991) (Cum.Supp.1991), the employer may not assert the employee's contributory negligence as a defense to such action. Likewise, the circuit court's ruling allowing Consol to assert a hybrid contributory negligence/deliberate intention defense in answer to Roberts' deliberate intention claim has no basis in the controlling statutes. Accordingly, we hold further that an employer defending against its employee's deliberate intention action, which suit has been brought pursuant to W. Va.Code §§ 23–4–2(b)–(c) (1991) (Cum. Supp.1991), may not assert as a defense thereto the employee's deliberate intention, as that term is construed by W. Va.Code § 23–4–2(c)(2), in causing or contributing to his/her occupational injury or disease.[24] Lastly, we hold that an employer may, in response to an employee's deliberate intention action filed in accordance with W. Va. Code §§ 23–4–2(b)–(c) (1991) (Cum.Supp. 1991), assert as a defense thereto that the occupational injury or disease for which the employee seeks compensation was intentionally self-inflicted by the employee. W. Va. Code § 23–4–2(a) (1991) (Cum.Supp.1991).

As the hybrid defense of contributory negligence/deliberate intention asserted by Consol, and permitted by the circuit court, has no basis in the worker's compensation law of this State, we find that the circuit court erred by denying Roberts' motion to strike such defense and, therefore, reverse that ruling. Because the allowance of this defense tainted the trial of Roberts' deliberate intention claim and played an integral role in the entirety of the proceedings, from the admission and exclusion of evidence to the jury's ultimate verdict and award of damages, we are left with no choice but to remand this case for a new trial.

**2. Additional Assignments of Error**

Roberts additionally contends that the circuit court erred by (1) failing to obtain a final ruling from the discovery commissioner to whom certain discovery issues had been as-

**23.** Consol asserts, on the contrary, that because W. Va.Code § 23–2–8 (1991) (Repl.Vol.1998) removes contributory negligence from the defenses available to defaulting employers and those electing not to subscribe to the workers' compensation fund, then the doctrine of "expressio unius est exclusio alterius" operates to include contributory negligence in the realm of defenses available to subscribing employers. *See State ex rel. Riffle v. Ranson,* 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995) ("*Expressio unius est exclusio alterius* (express mention of one thing implies exclusion of all others) is a well-accepted canon of statutory construction." (citations omitted)); *Johnson v. Continental Cas. Co.,* 157 W.Va. 572, 578, 201 S.E.2d 292, 296 (1973) ("As a general rule of statutory construction applicable here, the exclusion of one subject or thing in a statute is the inclusion of all others." (citations omitted)). When interpreting a body of statutory law, we are bound to consider all parts of a statutory enactment and to afford such law a connotation so that each part is consistent with one another. *Henry v. Benyo,* 203 W.Va. 172, 178, 506 S.E.2d 615, 621 (1998) ("[S]tatutes relating to the same subject matter, or subparts of the same statutory subject matter, should be construed consistently with one another." (citations omitted)); *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990) (recognizing "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results"); Syl. pt. 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975) ("Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."). To interpret the law as suggested by Consol would directly contravene the stated legislative purpose of protecting employees from their own negligence. *See* W. Va.Code § 23–4–2(c)(1); Syl. pt. 7, *Thompson v. State Compensation Comm'r,* 133 W.Va. 95, 54 S.E.2d 13 (1949).

**24.** This ruling does not, however, preclude an employer defending a deliberate intention action from proving, in accordance with W. Va.Code § 23–4–2(a), that its employee's occupational injury or disease was either self-inflicted or resulted from his/her intoxication.

signed for resolution; (2) not bifurcating the liability and damages portions of the trial from the determination of the workers' compensation offset; (3) admitting some, and excluding other, various evidentiary matters; and (4) upholding the jury's verdict despite insufficient evidence therefor and an inadequate award of damages thereon.

### a. Incomplete discovery.

██ Roberts also assigns error to the circuit court's failure to compel a final ruling on a disputed discovery issue that had been referred to a discovery commissioner. The unresolved discovery issue involved Plaintiff's Interrogatory Number 20 which requested Consol to "[s]tate the name and address of any person who [it] knows or [has] reasons to believe has sustained any injury while using the support shield in question or similar support shields." Following Consol's failure to provide the requested information, Roberts filed a motion to compel discovery on January 13, 1998. By order entered January 20, 1998, the circuit court referred this discovery issue, as well as several others, to a discovery commissioner for final resolution, directing that "[t]he parties hereto each shall first deposit One Hundred Dollars ($100.00) with the Clerk of the Court." The court further ordered that "[t]his matter shall be heard by the [Discovery] Commissioner and the Recommended Order report filed with the Court within twenty (20) days; otherwise this discovery issue shall be deemed moot." Following this referral, the appointed discovery commissioner was replaced with a second commissioner. As a result of the commissioner's involvement, it appears that a number of the discovery issues were finally resolved. However, no final ruling was issued with respect to Plaintiff's Interrogatory Number 20.

In our decision of this issue, we note, at the outset, a number of unresolved factual questions that are not apparent from the appellate record. We are particularly troubled by the allegations of Consol that Roberts failed to comply with the requirement of depositing a sum certain with the circuit court clerk and by the express terms of the order whereby the contested issue could essentially expire if it was not decided promptly. Both of these queries remain unanswered by the record before us, and, so, we first direct the circuit court, on the remand of this case, to ascertain whether, in fact, Roberts complied with the deposit requirement. Furthermore, while it appears that personnel changes are partially to blame for the lack of diligence in resolving this discovery dispute, the circuit court should further determine whether the failure to obtain a final ruling in a timely manner can be attributed to either or both parties. The ultimate goal of the circuit court's resolution of these factual disputes is to determine whether Roberts has, by lack of compliance, due diligence, or otherwise, waived his right to the requested relief.

██ Having discussed the factual difficulties with this issue, we turn now to examine the applicable law. Rule 37(a) of the West Virginia Rules of Civil Procedure permits a party to move for an order compelling discovery. W. Va. R. Civ. P. 37(a) ("A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery . . . ."). "Generally this Court reviews a circuit court's ruling on a discovery request for an abuse of discretion." *State ex rel. Ward v. Hill,* 200 W.Va. 270, 275, 489 S.E.2d 24, 29 (1997). Where, however, " 'the trial court makes no findings,' " we proceed under a heightened review of the lower court's discovery ruling. *Id.,* 200 W.Va. at 276, 489 S.E.2d at 30 (quoting *State ex rel. United States Fidelity & Guar. Co. v. Canady,* 194 W.Va. 431, 439, 460 S.E.2d 677, 685 (1995) (internal citations and quotations omitted)) (additional citations omitted).

Here, the circuit court, though referring the matter to a discovery commissioner, essentially made no findings on the merits of the discovery request. Additionally, we are especially troubled that no final recommendation was issued by the discovery commissioner given that the issue in contention was directly related to an essential element of Roberts' deliberate intention case. *See* Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991) ("Given the statutory framework of W. Va.Code §§ 23-4-2(c)(2)(i) and (ii), (1983, 1991) which equates

proof of the five requirements listed in W. Va.Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, *especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition.* This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, *it must be shown that the employer actually possessed such knowledge."* (emphasis added)). Therefore, due to the importance of the evidence sought to be discovered vis-a-vis Roberts' burden of proof, we instruct the circuit court, if the factual circumstances determined above so warrant,[25] to obtain a final determination of this discovery matter prior to the commencement of the new trial in this case.

**b. Bifurcation of liability and damages and workers' compensation offset.**

 Roberts' next assignment of error, which pertains to bifurcation, has two distinct components. First, Roberts complains that the circuit court erroneously de-

nied his motion to bifurcate the liability and damages portion of the trial from the determination of the workers' compensation offset as suggested by the dissenting opinion in *Mooney v. Eastern Associated Coal Corp.,* 174 W.Va. 350, 326 S.E.2d 427 (1984).[26] This standard has not, however, been adopted as a required method of procedure in deliberate intention cases. Therefore, the law generally applicable to the propriety of bifurcation in a particular case controls.

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any claim, ... or of any separate issue or any number of claims ... or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

W. Va. R. Civ. P. 42(c) (emphasis added). To this end,

"[p]arties moving for separate trials of issues pursuant to West Virginia Rule of Civil Procedure 42(c), or the court if acting *sua sponte,* must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of

---

**25.** Consol intimates that Roberts' actions substantially contributed to the failure to timely obtain a final recommendation from the discovery commissioner and suggests that Roberts could have procured more expedient relief through a petition for writ of prohibition. *See* Syl. pt. 3, *State ex rel. Myers v. Sanders,* 206 W.Va. 544, 526 S.E.2d 320 (1999) (" 'A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.' Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992)."). As we do not find that the circuit court abused its discretion *per se* in this instance, though, Roberts' failure to seek prohibitory relief pursuant to *Myers* does not automatically bar the continued pursuit of his discovery request.

**26.** The language upon which Roberts relies rejects the notion of a single trial in deliberate intention cases in favor of a bifurcated proceeding:

The majority opinion, particularly in Syllabus Point 1, indicates that in a *Mandolidis* suit, the issues of liability, damages and the work-

ers' compensation benefits offset must be decided in a single trial. While such a procedure may be appropriate in certain cases, I believe that in many cases, having a jury address all of these extremely complex issues and mathematical calculations in a single trial would be unduly burdensome. A better procedure, one that was followed by the trial court in this case, would be to have a bifurcated trial. The first part of the trial would decide liability and damages under *Mandolidis*, and the second phase would decide the workers' compensation benefits offset received by the plaintiff. By bifurcating the trial in this manner, the jury would be able to separate the damage calculations from the offset calculations. Furthermore, if the jury finds no liability in the first part of the trial, then there would be no need to present any evidence on the workers' compensation benefits offset.

*Mooney v. Eastern Assoc. Coal Corp.,* 174 W.Va. 350, 356, 326 S.E.2d 427, 433 (1984) (Miller, J., dissenting).

the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants." Syl. pt. 6, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988).

Syl. pt. 2, *Barlow v. Hester Indus., Inc.*, 198 W.Va. 118, 479 S.E.2d 628 (1996). Thus,

"[t]he burden of persuasion is placed upon the shoulders of the party moving for bifurcation. A trial judge may insist on an explanation from the moving party as to why bifurcation is needed. If the explanation reveals that the integrity of the adversarial process which depends upon the truth-determining function of the trial process would be harmed in a unitary trial, it would be entirely consistent with a trial court's authority to grant the bifurcation motion." Syl. pt. 5, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

Syl. pt. 1, *Barlow*, 198 W.Va. 118, 479 S.E.2d 628.

 From our review of Roberts' arguments and the appellate record in this case, we are not convinced that Roberts has demonstrated the "compelling prejudice" necessary to overcome the circuit court's exercise of discretion.

"To demonstrate that the trial court abused its discretion, a showing of 'compelling prejudice' is required. 'Compelling prejudice' exists where a [party] can demonstrate that without bifurcation he or she was unable to receive a fair trial ... and that the trial court could afford no protection from the prejudice suffered. In short, this Court will grant relief only if the appellant can show prejudice amounting to fundamental unfairness."

*Id.*, 198 W.Va. at 127, 479 S.E.2d at 637 (quoting *State v. LaRock*, 196 W.Va. at 315, 470 S.E.2d at 634). Under the facts and circumstances involved in the instant appeal, we cannot conclude that Roberts sustained "fundamental unfairness" as a result of the circuit court's decision not to bifurcate the underlying trial proceedings. Accordingly, we affirm the circuit court's ruling in this regard.

 Second, Roberts contends that the circuit court erroneously instructed the jury as to the effect of his recovery of workers' compensation benefits on the measure of damages to be calculated by the jury. The portion of the court's charge to the jury to which Roberts assigns error states:

Under West Virginia workers' compensation laws, an employee injured on the job, such as Steven Roberts, receives workers' compensation benefits for medical care and treatment, plus financial support in lieu of regular wages, for an on-the-job injury, even if the injury was his own fault or the fault of a fellow employee.

Following the above-quoted instruction challenged by Roberts, which was included in a cursory explanation of West Virginia workers' compensation law, the court further

instruct[ed] the Jury that, if you find in favor of the Plaintiff, you should award him the full amount of compensation that you conclude he is entitled to receive under the standards set forth in these instructions and, in doing so, *you should not deduct any amount of money for worker's compensation benefits which he has received in the past or which he may receive in the future.* If you find in favor of the Plaintiff and award him damages, the Court will then deduct, from the damages that you award him, an amount equal to the value of worker's compensation benefits which the Plaintiff is entitled to receive.

(Emphasis added). This second-quoted instruction directly conflicts with our prior decision in Syllabus point 1 of *Mooney v. Eastern Associated Coal Corp.*, 174 W.Va. 350, 326 S.E.2d 427, wherein we held "[i]n a civil action brought under the deliberate intent provisions of W. Va.Code, 23–4–2 [1969], evidence of the value of compensation benefits *must* be submitted to the jury *with instructions that any verdict for the plaintiff shall be for damages in excess of such benefits.*" (Second emphasis added). Pursuant to the circuit court's instruction, the jury is requested to do precisely the opposite of that which is mandated by our prior decision in *Mooney*. Instead of directing the jury to make an award for the damages Roberts sustained, which damages exceed the workers' compensation benefits he previously has received,

240

the circuit court's instruction expressly commands the jury to forego any such adjustment. Thus, we find this instruction to be erroneous as an incorrect statement of the applicable law.

 Ordinarily,

[t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. pt. 6, *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). Where, however, "the instructions are incorrect as a matter of law," we will not hesitate to override the lower court's instructional discretion. *State v. Guthrie*, 194 W.Va. 657, 672, 461 S.E.2d 163, 178 (1995). Because we conclude that the circuit court improperly instructed the jury as to the method by which it should calculate Roberts' damages vis-a-vis his workers compensation benefits, we reverse the circuit court's ruling in this regard.

**c. Admission and exclusion of evidence.**

 Roberts further contends that the circuit court erred by making improper evidentiary rulings. While this assignment of error is no longer dispositive of the case, *see supra* Section III.B.1., we nevertheless feel compelled to provide it brief treatment

since it is capable of repetition during the proceedings on remand. First, Roberts finds fault with the circuit court's decision to admit into evidence (1) a laboratory report indicating that cannabinoid, *e.g.*, marijuana, and benzodiazepine, *e.g.*, Valium, were present in his body on the night of the accident and (2) out-patient psychological records referencing Roberts' addictions to marijuana and alcohol. Where matters of admissibility are concerned, generally the decision of whether to admit the evidence in question is committed to the presiding judge's sound discretion. Syl. pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997) (" 'The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admissi[on] of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard.' Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995)."). *Accord* Syl. pt. 5, *State ex rel. Ward v. Hill*, 200 W.Va. 270, 489 S.E.2d 24; Syl. pt. 2, *State v. Perolis*, 183 W.Va. 686, 398 S.E.2d 512 (1990).[27]

 In the same manner, Roberts urges that the circuit court erred by excluding from evidence (1) an MSHA citation issued to Consol following an allegedly similar accident at another of its mines and (2) various MSHA documents upon which Roberts'

**27.** Of particular relevance to the circuit court's decision to admit the evidence complained of by Roberts is the criteria for determining the admissibility of "other acts" evidence:

"Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct w[ere] committed or that the defendant was the actor, the evidence should

be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

Syl. pt. 11, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997).

expert witness relied in forming his expert opinion as to Consol's subject realization of the unsafe working condition. " 'When evidence is excluded and the action of the court in excluding it is relied upon in the appellate court, it must appear on the record that the evidence rejected was or would have been relevant, material and important to make its rejection available as a ground of error.' Syllabus Point 5, *Maxwell v. Kent,* 49 W.Va. 542, 39 S.E. 174 (1901)." Syl. pt. 15, *Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990). *Cf.* W. Va. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence … is ground … for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").[28]

Even though circuit courts enjoy broad discretion in making evidentiary rulings, they nevertheless are required to abide by and employ the applicable Rules of Evidence in making such determinations. Specifically, Rules 401, 402, and 403 of the West Virginia Rules of Evidence dictate when evidence is relevant and admissible and when, despite these qualities, evidence should be excluded. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." W. Va. R. Evid. 403.[29] Therefore, we direct the circuit court, on remand, to properly consider the evidence proffered by the parties in light of the applicable rules.[30]

### d. Remaining errors.

Roberts' last two assignments of error concern the sufficiency of the evidence and the

---

**28.** Especially pertinent to the court's decision regarding the exclusion of evidence is our prior directive concerning "similar occurrence" evidence: "To be admissible at all, similar occurrence evidence must relate to accidents or injuries or defects existing at substantially the same place and under substantially the same conditions. Evidence of injuries occurring under different circumstances or conditions is not admissible." Syl. pt. 3, *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991).

**29.** *See also* Syl. pt. 5, *Michael ex rel. Estate of Michael v. Sabado,* 192 W.Va. 585, 453 S.E.2d 419 (1994) ("Rule 403 of the West Virginia Rules of Evidence is explicit in the discretion granted a trial judge to admit or exclude contradictions found to be 'relevant' under Rule 401. Many of the evils that Rule 403 is designed to avoid are similar to those sought to be avoided by the exclusion of extrinsic evidence on a collateral matter to impeach credibility. These evils include confusion of the issues, misleading the jury, undue delay, and waste of time."); Syl. pt. 4, in part, *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 ("Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice ….").

**30.** We further urge the circuit court to remain especially mindful of the burden borne by a plaintiff in a deliberate intention action. *See*

*generally* Syl. pt. 4, *Blake v. John Skidmore Truck Stop, Inc.,* 201 W.Va. 126, 493 S.E.2d 887 (1997) (" 'To establish "deliberate intention" in an action under Code, 23–4–2(c)(2)(ii), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements.' Syl. Pt. 2, *Helmick v. Potomac Edison Co.,* 185 W.Va. 269, 406 S.E.2d 700 (1991)."); Syl. pt. 2, *Mayles v. Shoney's, Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990) ("A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W. Va.Code § 23–4–2(c)(2)(ii) (1983)."). *See also* Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991) ("Given the statutory framework of W. Va.Code §§ 23–4–2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W. Va. Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.").

adequacy of the damages awarded in the underlying trial. As we have concluded that the hybrid contributory negligence/deliberate intention defense was not available to Consol and that the allowance of it requires a new trial, it would be futile to consider whether the evidence presented in support of this erroneous defense was sufficient or whether the damages awarded despite this improper theory of law were adequate. Therefore, we decline further consideration of these matters. *See supra* note 8.

## IV.

### CONCLUSION

For the foregoing reasons, we find no reason to dismiss Roberts' appeal as untimely pursuant to W. Va. R. Civ. P. 59(b) or W. Va. R.App. P. 3(a) and, therefore, deny Consol's motion to dismiss the same. Furthermore, we conclude that the circuit court erroneously permitted Consol to assert a hybrid contributory negligence/deliberate intention defense to Roberts' deliberate intention action against Consol, and that such error requires the reversal of the circuit court's September 16, 1998, judgment order and the remand of this case for a new trial. Additionally, we instruct the circuit court to ascertain the factual posture of the discovery dispute and to conduct further proceedings as the circumstances warrant. Finally, we affirm the circuit court's denial of Roberts' motion to bifurcate the lower court proceedings; and we find reversible the error committed by the lower court in improperly instructing the jury as to the method of calculating damages vis-a-vis workers' compensation benefits in a deliberate intention action.

Affirmed, in part; Reversed, in part; and Remanded.

Justice STARCHER did not participate.

Judge THORNSBURY sitting by temporary assignment.